UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

INTEGRATED CONSTRUCTION
ENTERPRISES, INC.,

                        Plaintiff,

                  v.

UNIVERSAL HEATING & AIR CONDITIONING,
INC. and TOM GRACIN,

                        Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-2893 (MKB)

MARGO K. BRODIE, United States District Judge:

I.    Background ......................................................................................................... 2

   a.   The Project and the subcontracting agreement ............................................... 3

   b.   Universal's alleged breach ............................................................................. 5

   c.   Procedural history ......................................................................................... 7

II.   Discussion ......................................................................................................... 9

   a.   Standard of review ...................................................................................... 11

   b.   ID Breach of Contract claim ....................................................................... 12

      i.   Standing and damages .............................................................................. 15

         1.   Reputational risk ................................................................................ 16

         2.   Potential contractual or regulatory sanctions and administrative burdens ................ 17

      ii.   Failure to identify the Subcontract provisions Universal breached ............................. 20

   c.   Unjust enrichment ....................................................................................... 21

   d.   Breach of the implied covenant of good faith and fair dealing ........................................ 30

   e.   Fraud against Gracin ................................................................................... 38

      i.   Fraudulent inducement ............................................................................ 40

      ii.   Fraud during performance of the Subcontract .................................................. 48

         1.   Pleading a fraud/fraudulent misrepresentation claim based on a breach of contract ........ 50

         2.   Integrated Construction has failed to meet the Rule 9(b) requirements to plead fraud against Gracin ......... 57

   f.   Leave to amend the Complaint .................................................................... 61

III.   Conclusion ...................................................................................................... 64

Plaintiff Integrated Construction Enterprises, Inc. ("Integrated Construction") commenced the above-captioned action against Defendants Universal Heating & Air Conditioning, Inc. ("Universal") and Tom Gracin, owner and officer of Universal, in the United States District Court for the District of New Jersey on February 7, 2025, *Integrated Constr. Enters., Inc. v. Universal Heating & Air Conditioning, Inc.*, No. 2:25-CV-1089 (D.N.J. filed Feb. 7, 2025), asserting causes of action for breach of contract, unjust enrichment, and breach of implied covenant of good faith and fair dealing against Universal and fraud against Gracin. (Compl., Docket Entry No. 1.)  Integrated Construction's claims arise out of Integrated Construction's contracting, as general contractor, of Universal, as subcontractor, for the provision of constructions services on the Addabbo Child Care HVAC renovation project (the "Project") located at 155-10 Jamaica Avenue, Jamaica, N.Y. (the "Premises").  (*Id.* ¶¶ 1, 7.)

On September 11, 2025, Defendants moved to partially dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"), and Integrated Construction opposed the motion.[1]  For the reasons explained below, the Court grants Defendants' motion to dismiss.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding Universal's motion.  The Court also considers documents attached to and incorporated

---

[1] (Notice of Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 25; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), appended to Defs.' Mot., Docket Entry No. 25-6; Decl. of Peter J. Sluka, Esq. in Supp., of Defs.' Mot. ("Sluka Decl."), appended to Defs.' Mot., Docket Entry No. 25-1; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 23; Decl. of Othiamba N. Lovelace, Esq. in Supp. of Pl.'s Opp'n ("Lovelace Decl."), appended to Pl.'s Opp'n, Docket Entry No. 23-1; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 26.)

by reference in the Complaint.[2]  *See* Fed. R. Evid. 201(b) (permitting judicial notice of facts "not subject to reasonable dispute").

### a.    The Project and the subcontracting agreement

On or about March 31, 2022, Integrated Construction, as general contractor, entered into a subcontract agreement (the "Subcontract")[3] with Universal, as subcontractor, for construction services related to the Project located at the Premises.  (Compl. ¶ 7.)  General Services Administration ("GSA") owns the Premises.  (*Id.* ¶ 8.)  Universal was contracted to perform services such as "furnishing labor and equipment to perform the demo[lition] of existing [heating, ventilation, and air conditioning ("HVAC")] pursuant to certain drawings; furnishing shop drawings for new ductwork layout; furnishing material such as diffusers and grilles as per certain specifications; labor sheet metal duct-work; labor steam fitter piping; and labor service fitter start-up equipment."  (*Id.* ¶ 9.)

In addition to listing Universal's scope of work, the Subcontract contained other relevant provisions, including: (1) "impos[ing] certain terms on the parties and damages for actual

---

[2]  In deciding a Rule 12(b)(6) motion, "the district court is normally required to look only to the allegations on the face of the complaint," but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Pearson v. Gesner*, 125 F.4th 400, 406 (2d Cir. 2025) (first citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and then quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016))).

[3]  Defendants attached the Subcontract to their motion to dismiss.  (*See* Subcontract, annexed to Sluka Decl. as Ex. B, Docket Entry No. 25-3.)  As the Complaint directly references the Subcontract, (*see* Compl. ¶¶ 7–17), the Court finds it integral to the Complaint and therefore relies on the Subcontract.  *See Interpharm, Inc. v. Wells Fargo Bank, Nat. Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) ("Where, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion [to dismiss]."); *Axiom Inv. Advisors, LLC by & through Gildor Mgmt., LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 533 (S.D.N.Y. 2017) ("On a motion to dismiss for breach of contract, courts look . . . at the contract itself, which by definition is integral to the complaint." (citing *id.*)).  No party objects to the Court considering the Subcontract in deciding Universal's motion to dismiss.

3

damages, including attorneys' fees, in the event of Universal's breach," (*id.* ¶ 10); (2) containing a "time is of essence" provision in which Universal "recognize[d] and agree[d] that time is of the essence . . . and acknowledge[d] that this [a]greement ha[d] been awarded to [Universal] because of their representations of timely performance," (*id.* ¶ 11 (sixth alteration in original) (citing Subcontract Section 3.1)); (3) requiring Universal to "furnish the labor and provide competent supervision," (*id.* ¶ 12  (citing Subcontract Section 8.2)); (4) requiring Universal to "coordinate and cooperate with [Integrated Construction]," (*id.* ¶ 12 (citing Subcontract Sections 8.3 and 14.5)); (5) requiring Universal to "secure the Premises," providing only authorized access, and "to co-ordinate all security efforts with [Integrated Construction]'s on-site management," (*id.* ¶¶ 12, 14 (citing Subcontract Sections 8.7 and 8.7.1)); (6) requiring Universal to "follow the schedule prepared by [Integrated Construction]," (*id.* ¶ 12 (citing Subcontract Section 3.2)); (7) requiring Universal to "perform work in strict compliance with the contract documents 'in the most sound, workmanlike, and substantial manner,'" (*id.* (citing Subcontract Section 9.1)); and (8) requiring Universal to indemnify Integrated Construction and GSA and "hold them harmless from any and all loss, damage, costs, expenses and attorney's fees incurred on account of the [s]ubcontractor's breach of any covenant or provision of this [a]greement," (*id.* ¶ 16 (citing Subcontract Section 12.4)).[4]

---

[4]  The Subcontract states it is "governed by the laws of New Jersey." (Compl. ¶ 17 (citing Subcontract Section 15.2).)  The Court would typically enforce the choice-of-law provision and therefore apply the laws of New Jersey when interpreting and enforcing the contract.  *See Olcott v. Fond du Lac Cnty.*, 83 U.S. 678, 682 (1872) ("In cases of contract, the law of the [s]tate in force when the contract was made . . . must be applied in the [f]ederal courts in construing and enforcing the contract."); *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003) (holding when interpreting contracts in a diversity action, federal courts generally enforce the parties' contractual choice of governing law); *Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 215 (E.D.N.Y. 2003) ("Courts will generally enforce a contractual choice of law provision in a dispute between the parties to a contract — at least where the dispute concerns the construction or validity of the contract.")

### b. Universal's alleged breach

Integrated Construction alleges the Project began in 2022, although Integrated Construction only "mobilized and started work on the Project on February 27, 2023." (Compl. ¶ 18.) Because the Premises was occupied by children in childcare for most of the year, the work on the Project was "time sensitive and could only be done during the summer." (*Id.* ¶ 19.) After "unfounded excuses to delay the commencement of its work" on the Project, Universal started work on the Project on August 23, 2023. (*Id.* ¶¶ 19–20.)

Between September 27, 2023 and November 6, 2023, "[Integrated Construction] made multiple requests for Universal's work schedules and lookaheads," which it failed to respond to "in a timely fashion," and when Universal "finally sent one of the requested schedules," it failed to comply with the schedule and subsequently "ignored [Integrated Construction]'s inquiries regarding its non-compliance." (*Id.* ¶ 21.) Between November 9, 2023 and January 12, 2024, Universal ignored Integrated Construction's numerous requests for a completion plan and its other inquiries related to Universal's work on the Project. (*Id.* ¶¶ 22–24.) "During the same period of time, the [c]onstruction [m]anager, Genco Systems Inc., and GSA requested the upcoming schedules, and ultimately, recognized that the schedules could not be achieved

---

However, both Integrated Construction and Defendants' memorandums of law assert that New York law governs the dispute. (*See generally* Defs.' Mem.; Pl.'s Opp'n; Defs.' Reply.) On January 23, 2026, the Court directed the parties to file supplemental briefing on the issue of choice of law, reconciling that the Subcontract is governed by the laws of New Jersey while counsel for both parties assert that New York and Second Circuit case law apply. (Order dated Jan. 23, 2026.) In response, on February 4, 2026, the parties filed a joint letter explaining that the parties met and conferred and "agreed that New York law governs the claims asserted in the Complaint, without prejudice to the parties' rights to address choice-of-law issues arising from any future counterclaims asserted by Defendants." (Choice of Law Ltr., Docket Entry No. 28.) In addition, the parties filed a choice of law stipulation memorializing their agreement. (Choice of Law Stip., appended to Choice of Law Ltr., Docket Entry No. 28-1.) Given the parties' agreement and the filed choice of law stipulation, the Court will interpret and enforce the Subcontract in accordance with New York law.

because of nonperformance by Universal in the preceding months." (*Id.* ¶ 25.)  After Universal's failure to respond to a meeting agenda on January 17, 2024 and Gracin's "use[ of] offensive language directed to [Integrated Construction]'s representatives" on January 18, 2024, Universal notified Integrated Construction via email on January 22, 2024 that "Universal would pick up its tools after Integrated Construction began using a new subcontractor." (*Id.* ¶¶ 26–28.)

On February 5, 2024, Integrated Construction sent a cure notice to Universal, which Universal "ignored." (*Id.* ¶¶ 30–31.)  Further, on February 15, 2024 and February 19, 2024, Integrated Construction requested completion items from Universal with no response. (*Id.* ¶¶ 32, 34.)

Due to Universal's failure to either complete certain contracted work and/or complete certain contracted work correctly, Integrated Construction incurred additional expenses in hiring additional subcontractors to complete the Project and additional time to rectify the problems and fix the defective work. (*Id.* ¶¶ 33, 35–38.)

Moreover, Integrated Construction alleges various Universal employees were issued ID cards in connection with Universal's work on the Project and have yet to return their ID cards despite GSA's requests.[5]  (*Id.* ¶¶ 40–41.)  Starting in October of 2024, "[Integrated Construction] has made numerous attempts to contact Universal and the Universal [e]mployees directly to resolve the issue and secure the return of the ID cards." (*Id.* ¶ 42.)  These efforts include emails, phone calls, and letters, including one from Elie Cherbaka, Vice President of Integrated Construction, on December 23, 2024, sent directly to each Universal employee at their respective home address formally notifying that each was required to return their ID card. (*Id.* ¶¶ 42–43.)

---

[5]  The employees of Universal who received ID cards include Richard Moy, John Morehouse, Ji Ming Wang, Jong Kim, Erica Johnson, Genesis Acevado, Christopher Munoz, and Claude Munoz. (Compl. ¶ 39.)  At the time of the Complaint's filing, Genesis Acevado and Jin Min Wang have returned their respective cards, while the other six remain missing. (*Id.* ¶ 44.)

At the time of the Complaint's filing, six ID cards have yet to be returned and Universal and the Universal employees "have not made any efforts to return the remaining ID cards or to respond to communications requesting the same." (*Id.* ¶¶ 44–45.) In response, GSA "has stated its intention to implement retainage charges due to the non-return of the ID cards." (*Id.* ¶ 46.)

### c. Procedural history

Integrated Construction brings four causes of action against Universal: (1) breach of the Subcontract by "failing to provide schedules and lookaheads, failing to respond to [Integrated Construction]'s inquiries, failing to perform work as agreed, and performing work incorrectly, necessitating rework," (Compl. ¶¶ 47–51), (2) breach of the Subcontract by failing "to protect and secure [GSA's] property, adequately supervise the Universal employees, ensure the return of [GSA's] property at the conclusion of the Project, and to coordinate with [Integrated Construction] on all aspects of the Project including security issues," (*id.* ¶¶ 52–55); (3) unjust enrichment alleging Universal was "unjustly enriched to [Integrated Construction]'s detriment," (*id.* ¶¶ 56–59); and (4) breach of the implied covenant of good faith and fair dealing alleging "Universal's non-responsiveness and complete abandonment of the Project constitutes breaches of the implied covenant of good faith and fair dealing," (*id.* ¶¶ 60–63).

Integrated Construction also brings a cause of action for fraud against Gracin. (*Id.* ¶¶ 64–75.) Integrated Construction alleges that during the Project, Sid Raman of Integrated Construction spoke with Gracin and advised him "that it was critically important for Universal to complete its work within a specified period of time and that time would be of the essence under the contract." (*Id.* ¶ 66.) "During their conversation, Gracin made certain representations about Universal's capabilities and assured Raman that Universal had sufficient manpower and could complete the project in a timely manner." (*Id.* ¶ 67.) Integrated Construction contends that "[i]n order to induce Integrated Construction to enter into an agreement with Universal, Gracin falsely

and fraudulently represented to [Integrated Construction] that Universal had sufficient manpower and could complete the project in a timely manner." (*Id.* ¶ 68.) Integrated Construction alleges these representations were "false and untrue," "were known by [Gracin] to be untrue at the time such statements were made," were "material to [Integrated Construction] in deciding to enter into the [S]ubcontract," which "should have been known by Gracin," were made "with the intent to deceive and defraud [Integrated Construction] with the intent to induce [Integrated Construction]'s reliance on the representations," and which Integrated Construction, reasonably believing such representations to be true, justifiably relied on them when it "entered into the [S]ubcontract and suffered injury as a proximate result of said misrepresentation." (*Id.* ¶¶ 69–72.) Moreover, Integrated Construction contends "Gracin exercised complete domination over Universal," "acted in his personal interests, not in the best interests of Universal," and "breached his fiduciary duties to Universal by refusing to abide by the Subcontract and unilaterally abandoning the [P]roject." (*Id.* ¶¶ 73–74.)

Pursuant to a signed stipulation, the parties agreed and consented to transfer venue to the United States District Court for the Eastern District of New York, and the District of New Jersey entered an order transferring the case on May 22, 2025. (Stip. and Order to Transfer Venue, Docket Entry No. 10.) As part of the stipulation, Defendants agreed to withdraw their previously filed motion to dismiss without prejudice with the opportunity to refile the motion. (*Id.* at 2; *see* Mot. to Dismiss, Docket Entry No. 6; Stip. re Defs.' Mot. to Dismiss, Docket Entry No. 9.) The case was officially transferred to the Eastern District of New York on May 23, 2025. (*See* Notification of Case Transfer, Docket Entry No. 11.)

On September 11, 2025, Defendants moved to partially dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6), and Integrated Construction opposed the motion. (*See* Pl.'s Mot.; Defs.' Opp'n.)

Specifically, Defendants moves to dismiss the following causes of action: (1) breach of contract for failure to return identification cards against Universal (the "ID Breach of Contract" claim or cause of action); (2) unjust enrichment against Universal; (3) breach of the implied covenant of good faith and fair dealing against Universal; and (4) fraud against Gracin. (Defs.' Mem. 1–2; *see* Compl. ¶¶ 52–75.) Defendants do not move to dismiss Integrated Construction's breach of contract claim against Universal for "failing to provide schedules and lookaheads, failing to respond to [Integrated Construction]'s inquiries, failing to perform work as agreed; and performing work incorrectly, necessitating rework" (the "Performance Breach of Contract" claim or cause of action).[6] (Defs.' Mem. 1–2; Compl. ¶¶ 47–51.)

## II. Discussion

Defendants argue their motion to dismiss "seeks to narrow the dispute at stake between the parties — a singular breach of contract claim — so that the parties, and the Court, can belatedly get down to the business of resolving this matter." (Defs.' Mem. 1.) While Integrated Construction "properly pleads a cause of action for [Performance Breach of Contract]," Defendants argue the rest of the Complaint "goes astray, turning into a shotgun style pleading that alleges duplicative or insufficient facts to plead the remaining causes of action." (*Id.*) First, Universal argues the "Court should dismiss the [ID Breach of Contract cause of action] because [Integrated Construction] (i) does not have standing to bring this claim, since a different party (*i.e.*, [GSA]) has suffered the alleged damage; and (ii) fails to identify a single contractual provision that Defendants breached in the Subcontract." (*Id.*) Second, Universal argues that "[Integrated Construction] failed to adequately plead its [t]hird [c]ause of [a]ction for unjust

---

[6] In their memorandum of law in support of their motion to dismiss, Defendants admit that "Plaintiff and Defendants dispute who is at fault for the delays at the Project, and Plaintiff properly pleads a cause of action for [Performance Breach of Contract]." (Defs.' Mem. 1.)

9

enrichment and [f]ourth [c]ause of [a]ction for breach of the implied covenant of good faith and fair dealing because both claims are duplicative of [Integrated Construction]'s [Performance Breach of Contract cause of action] (*i.e.*, both claims are premised on the same alleged failures to timely perform under the Subcontract and seek the same measure of damages)." (*Id.* at 2.) Third, Gracin argues "[Integrated Construction] fails to allege with the required specificity when the alleged misrepresentations were made by Gracin, where the alleged misrepresentations were made, or how it was damaged as a result of the alleged misrepresentation." (*Id.*) Defendants argue that "[i]n reality, [Integrated Construction]'s fraud claim is an ill-conceived attempt to drag Gracin into this lawsuit not because he has any personal liability in this matter, but simply to add another avenue of potential recovery." (*Id.*)

Integrated Construction argues that Defendants' motion should be denied in its entirety. (Pl.'s Opp'n 1.) First, Integrated Construction argues its ID Breach of Contract claim is properly pled because the "Complaint alleges concrete harm to [Integrated Construction], including exposure to federal administrative consequences and reputational injury," and "[s]tanding does not depend on formal ownership of the cards, but on [Integrated Construction]'s direct legal and operational responsibilities under its prime contract" with GSA. (*Id.*) Second, Integrated Construction contends its claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are "independently viable" because "[i]t is well established that plaintiffs may plead in the alternative and that quasi-contract and covenant claims may proceed alongside contract claims where there is ambiguity as to coverage." (*Id.* at 1–2.) Third, Integrated Construction argues it pleads a "detailed and particularized" fraud claim against Gracin. (*Id.* at 2.) Relying on *Integrated Construction Enterprises, Inc. v. GN Erectors, Inc.*, No. 16-CV-5561, 2020 WL 614991 (S.D.N.Y. Feb. 10, 2020), where the court "upheld" a similar claim, Integrated Construction contends the Complaint sets forth specific

10

misrepresentations Gracin made that were intended to induce Integrated Construction to continue relying on Universal's performance and which caused Integrated Construction to delay replacement measures and incur added costs.  (*Id.*)  Lastly, Integrated Construction argues that "[g]iven the seriousness and specificity of the allegations, the Court should permit the claims to proceed to discovery" because the Second Circuit "disfavors dismissal at the pleading stage where unresolved factual issues require discovery to resolve."  (*Id.* at 14.)  "[S]hould the Court find any deficiencies in the current pleadings, [Integrated Construction] respectfully requests that any dismissal be without prejudice and with leave to amend."  (*Id.* at 15.)

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor."  *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (quoting *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) ("[The Second Circuit] review[s] *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Yerkyn v. Yakovelich*, 164 F.4th 224, 231 (2d Cir. 2026) (quoting *id.*).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see Knapp v. Barclays PLC,* 171 F.4th 166, 170 (2d Cir. 2026) (quoting

11

*Iqbal*, 556 U.S. at 678); *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting

*Matson*, 631 F.3d at 63); *see also Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 544 (2d Cir.

2024) ("[T]he plaintiff's allegations must enable the court to reasonably infer that the defendant

is liable for the alleged misconduct."), *cert. denied*, 146 S. Ct. 880 (2025); *Emilee Carpenter,*

*LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) ("[S]urviv[ing] a motion to dismiss . . . requires

'factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).  Although all allegations

contained in the complaint are assumed to be true, this tenet is "inapplicable to legal

conclusions." *Iqbal*, 556 U.S. at 678; *see Roe*, 91 F.4th at 651 ("Although all factual allegations

contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.

Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

### b.  ID Breach of Contract claim

Universal argues Integrated Construction's ID Breach of Contract claim should be

dismissed.  (Defs.' Mem. 5–8.)  First, Universal argues that "[Integrated Construction] fails to

establish that it has standing to bring this cause of action because the ID [c]ards are the property

of GSA, not [Integrated Construction]." (*Id*. at 5 (citing Compl. ¶ 41).)  "Being that the ID

[c]ards at issue belong to GSA, [Integrated Construction] has suffered no actual damages, nor

has standing to bring a claim in connection with the GSA ID [c]ards." (*Id.* at 6.)  In response to

Integrated Construction's contention that it suffered "potential sanctions, reputational damages,

and additional administrative burdens," (Defs.' Reply 4–5 (quoting Pl.'s Opp'n 5)), Universal

argues these harms are either not reasonably certain, not pled in the Complaint, and/or are not

recoverable under New York law, (*id.*).  Second, Integrated Construction contends that "[e]ven if

[Integrated Construction] could establish standing . . . [Integrated Construction]'s [ID] [B]reach

12

of [C]ontract claim fails for a simple reason: it does not allege which specific contract provision that Defendants breached." (Defs.' Mem. 5.)  Universal argues that "[Integrated Construction] is deliberately vague regarding what portion of the Subcontract Defendants allegedly breached," (*id.*), as the Complaint only alleges that "Universal had contractual duties *inter alia* to protect and secure [GSA's] property, adequately supervise the Universal employees, ensure the return of [GSA's] property at the conclusion of the Project, and to coordinate with [Integrated Construction] on all aspects of the Project including security issues," (*id.* (quoting Compl. ¶¶ 52– 55)).  Defendants argue that therefore, Integrated Construction's ID Breach of Contract claim should be dismissed because Integrated Construction "does not plead with the requisite particularity which provisions in the Subcontract were breached" "[n]or does [the Complaint] point to an obligation to heed [Integrated Construction's] demands to surrender GSA's ID [c]ards to [Integrated Construction]."  (*Id.*; *see also* Defs.' Reply 3–4.)

Integrated Construction contends it sufficiently pleads its ID Breach of Contract claim. (Pl.'s Opp'n 5–7.)  First, Integrated Construction argues it has standing to sue over the GSA ID cards as it was "directly harmed because [of] Universal's refusal to return the cards."  (*Id.* at 5.) It alleges Integrated Construction, as the prime contractor, was exposed "to reputational risk, potential contractual or regulatory sanctions, and administrative burdens" due to "Universal's recalcitrance" to return the ID cards.  (*Id.* at 5–6.)  These are "all tangible harms within [Integrated Construction's] operational and legal responsibility" that were "foreseeable, traceable, and directly tied to Universal's breach, with a clear path for redressability."  (*Id.* at 6.) Integrated Construction contends Universal "mischaracterize[s] [Integrated Construction]'s standing by focusing on ownership rather than on the consequences of Universal's refusal to return GSA [ID] cards" — instead, "[s]tanding centers on whether the plaintiff has suffered concrete, particularized, and traceable harm."  (*Id.* at 5.)  Second, Integrated Construction argues

13

it has sufficiently alleged Universal's contractual duties: "(i) to protect and secure [GSA]'s property; (ii) adequately supervise Universal's employees; (iii) ensure the return of [GSA's] property upon project completion; (iv) coordinate with Integrated Construction on all aspects of project security; and (v) comply with governing state and federal laws."[7]  (*Id.*)  It contends "[t]hese allegations are more than adequate under Rule 8 [of the Federal Rules of Civil Procedure]" and Universal's "argument merely raises factual disputes about scope — issues for discovery and summary judgment, not dismissal." (*Id.*)

"To prevail on a breach of contract claim under New York law, a plaintiff must show that '(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages.'" *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (quoting *34-06 73, LLC v. Seneca Ins.*, 39 N.Y.3d 44, 52 (2022)); *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) (quoting *RCN Telecom Servs., Inc. v. 202 Ctr. St. Realty LLC.*, 156 F. App'x 349, 350–51 (2d Cir. 2005)) (same); *see also Up State Tower Co. v. Town of Cheektowaga*, No. 24-165, 2025 WL 444207, at *1 (2d Cir. Feb. 10, 2025) (summary order) ("A breach of contract claim under New York law has four elements: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011))); *Creaven v. Erickson*, No. 22-874, 2023 WL 4247213, at *3 (2d Cir. June 29, 2023) (summary order) (listing the elements of breach of contract under New York law as "(1) an agreement; (2) performance by the plaintiff;

---

[7]  Integrated Construction does not include any citations to the Complaint in support of its argument that it "specifically identified the contractual obligations breached in failing to return the ID cards," (Pl.'s Opp'n 5), although these allegations appear to mirror the allegations contained within paragraph 53 of the Complaint.  Moreover, Integrated Construction does not include any citations to the Subcontract.  (*See generally* Pl.'s Opp'n 5–7; Compl. ¶¶ 52–55.)

14

(3) breach [by the defendant]; and (4) damages" (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996))); *Frye v. Lagerstrom*, No. 20-3134, 2021 WL 4022695, at *4 (2d Cir. Sep. 3, 2021) (summary order) (quoting *Segui*, 91 F.3d at 348); *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) ("To state a claim for breach of contract under New York law, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015))).

### i. Standing and damages

Integrated Construction argues it has standing to plead the ID Breach of Contract cause of action because it was "directly harmed because of Universal's refusal to return the [ID] cards" and points to the following three "tangible harms" that it contends were "foreseeable, traceable, and directly tied to Universal's breach": (1) "reputational risk"; and (2) "potential contractual or regulatory sanctions"; and (3) "administrative burdens." (Pl.'s Opp'n 5–6.)

The Court notes that the Complaint does not include any allegations regarding specific damages, aside from claiming "[a]s a direct and proximate result of Universal and Universal employees' conduct, [Integrated Construction] faces significant damages in an amount exceeding $75,000." (Compl. ¶ 55.) The Court is entitled to disregard the additional damage allegations contained only in Integrated Construction's briefing. *See Henry v. Oluwole*, 108 F.4th 45, 55 n.5 (2d Cir. 2024) (stating that "[a] court is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor" (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009))); *Chan v. City of New York*, No. 19-CV-7239, 2023 WL 2734681, at *8 (E.D.N.Y. Mar. 31, 2023) (declining to consider allegations not included in the plaintiff's complaint).

Nevertheless, even accepting Integrated Construction's damage allegations not found in the Complaint, Integrated Construction fails to state a claim for its ID Breach of Contract cause of action.

### 1.    Reputational risk

Starting with "reputational risk," courts in this Circuit have found that "[d]amages to reputation generally are not recoverable in a breach of contract action under New York Law." *Sheehan v. Air Co. Holdings, Inc.*, No. 25-CV-932, 2025 WL 3136223, at *10 (E.D.N.Y. Nov. 10, 2025) (alteration in original) (quoting *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005)); *see also Hanover Specialties, Inc. v. Les Revetements Polyval Inc.*, No. 19-CV-3732, 2021 WL 964970, at *9 (E.D.N.Y. Mar. 15, 2021) (same); *AmTrust N.A., Inc. v. KF&B, Inc.*, No. 17-CV-5340, 2020 WL 5503479, at *1 (S.D.N.Y. Sep. 11, 2020) (same); *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005) (same). "Reputational damages are available 'only in exceptional cases when the plaintiff proves specific business opportunities lost as a result of its diminished reputation.'" *Sheehan*, 2025 WL 3136223, at *10 (quoting *Smith*, 419 F. Supp. 2d at 453); *see also Hanover Specialties, Inc.*, 2021 WL 964970, at *9 (same); *AmTrust N.A., Inc.*, 2020 WL 5503479, at *1 (same); *Smith*, 419 F. Supp. 2d at 453 (same). "Absent specific proof, damages for loss of reputation are too speculative to be recovered under contract law." *Smith*, 419 F. Supp. 2d at 453 (quoting *Saxton Commc'n Grp., Ltd. v. Valassis Inserts, Inc.*, No. 93-CV-388, 1995 WL 679256, at *2 (S.D.N.Y. 1995)). "[V]ague assertions will not suffice." *Id.* (citing *I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F. Supp. 168, 175 (S.D.N.Y. 1994) (dismissing claim for reputational damages where the plaintiff had "not enumerated any specific harms arising from the alleged loss of reputation")).

Integrated Construction's allegations that it has suffered "reputational risk" harms due to Universal's breach are too vague and too speculative because Integrated Construction has failed

16

to plead any "specific proof" that it lost "business opportunities" as a result of its diminished reputation.  *Smith*, 419 F. Supp. 2d at 453.  Integrated Construction appears to concede that courts find "reputational harm resulting in career or business opportunity loss" sufficient, (Pl.'s Opp'n 6) — but both Integrated Construction's briefing and the Complaint fail to identify any specific loss of business opportunity it has suffered.  Moreover, it is not clear that Integrated Construction alleges its reputation has been harmed since its briefing does not even allege this and the Complaint only alleges that Integrated Construction faces "reputational *risk*" due to Universal's breach.  (*See id.* at 5–6 (emphasis added).)  These allegations are insufficient to allege damages for Integrated Construction's ID Breach of Contract claim.[8]  *See Sheehan*, 2025 WL 3136223, at *10 (finding a failure to plead damages for breach of contract because damages to reputation are not recoverable and the party failed to allege "specific business opportunities lost as a result of its diminished reputation); *cf. Hanover Specialties, Inc.*, 2021 WL 964970, at *9 (declining to dismiss the complaint finding the plaintiff alleged specific reputational harm that would result in loss of business opportunities).

### 2. Potential contractual or regulatory sanctions and administrative burdens

Integrated Construction also argues it has suffered "potential contractual or regulatory sanctions" and "administrative burdens" but provides no further explanation on what these

---

[8]  Integrated Construction also argues that the "Supreme Court has repeatedly held that reputational harm can support Article III standing when it mirrors traditionally recognized injuries." (Pl.'s Opp'n 6 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 438–39 (2021) (arguing that the Supreme Court held "that dissemination of false credit information to third parties, even where the violation was statutory, was sufficient to confer standing due to reputational injury")).)  This is unpersuasive given the well-settled rule under New York law that reputational harm is insufficient to confer standing specifically for a breach of contract claim. *See* discussion *supra*.

damages are or why such harms are sufficient to plead damages under a breach of contract cause of action. (*See* Pl.'s Opp'n 5–6.)

"To state a claim for breach of contract, the damages a plaintiff alleges 'must be not merely speculative, possible, and imaginary, but they must be *reasonably certain* and . . . actually follow  . . . from the breach of the contract.'" *Meng v. New School*, 686 F. Supp. 3d 312, 321 (S.D.N.Y. 2023) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007)); *see Bell v. Koss*, No. 17-CV-7762, 2024 WL 3949340, at *2 (S.D.N.Y. Aug. 27, 2024) ("It is well established that to recover damages from a breach of contract under New York law, the damages 'must be reasonable certain' and not 'speculative, possible [or] imaginary.'" (quoting *Tractebel Energy Mktg., Inc.*, 487 F.3d at 110)), *appeal docketed*, No. 24-2404 (2d Cir. Sep. 13, 2024); *Wilder v. World of Boxing LLC*, 310 F. Supp. 3d 426, 446 (S.D.N.Y. 2018) ("Where a party has failed to come forward with evidence sufficient to demonstrate damages flowing from the breach alleged and relies, instead, on wholly speculative theories of damages, dismissal of the breach of contract claim is in order." (quoting *Lexington 360 Assocs. v. First Union Nat'l Bank of N.C.*, 651 N.Y.S.2d 490, 492 (App. Div. 1996))); *Barton Grp., Inc. v. NCR Corp.*, 796 F. Supp. 2d 473, 496 (S.D.N.Y. 2011) ("Under New York law, a damages award 'may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach.'" (quoting *Kenford Co. v. Erie Cnty.*, 67 N.Y.2d 257, 261 (1986))). "'Certainty,' as it pertains to general damages, refers to the *fact* of damage, not the amount." *Tractebel Energy Mktg., Inc.*, 487 F.3d at 110; *see also Bell*, 2024 WL 3949340, at *2 ("A plaintiff claiming general damages must show 'a stable foundation for a reasonable estimate of the damage incurred as a result of the breach.'" (quoting *id.*)).

18

### A.    Potential contractual or regulatory sanctions

Integrated Construction's allegation that it was damaged due to "*potential* contractual or regulatory sanctions" is pled specifically as *potential* damages, which are "possible" and not "reasonably certain."  *Tractebel Energy Mktg., Inc.*, 487 F.3d at 110.  Integrated Construction rewords this allegation elsewhere in its opposition briefing and alleges it faces "exposure to federal administrative consequences and reputational injury."  (Pl.'s Opp'n 1.)  Integrated Construction fails to allege contractual or regulatory sanctions that are not "merely speculative [or] possible" but that it has actually incurred as a result of Universal's breach.  *Tractebel Energy Mktg., Inc.*, 487 F.3d at 110; *see LCM XXII Ltd. v. Serta Simmons Bedding, LLC*, No. 21-CV-3987, 2022 WL 953109, at \*12 (S.D.N.Y. Mar. 29, 2022) ("Under New York law, a plaintiff must prove the existence of damages with certainty in order to recover for breach of contract." (quoting *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 246 (S.D.N.Y. 2014))).

### B.    Administrative burdens

As to "administrative burdens," Integrated Construction fails to identify what damages it has suffered or how Universal's alleged breach led to "additional administrative burdens."  *See Khodeir v. Sayyed*, 323 F.R.D. 193, 202 (S.D.N.Y. 2017) ("[A] breach of contract claim must still allege sufficient facts supporting damages to support a plausible claim for relief . . . . In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." (internal quotation marks and citations omitted)).  Ultimately, Integrated Construction has failed to plead that it suffered damages that are legally sufficient to plead its ID Breach of Contract claim based on the failure of Universal and the employees to return their ID cards.  *See In re Waypoint Leasing Holdings Ltd*, 607 B.R. 143 (Bankr. S.D.N.Y. 2019) ("A complaint that fails to demonstrate how an alleged breach caused damage to the plaintiff is 'fatally deficient.'" (quoting *Gordon v. Dino De Lauentiis Corp.*, 529 N.Y.S.2d 777,

779 (App. Div. 1988))); *Bank Midwest, N.A. v. Hypo Real Estate Cap. Corp.*, No. 10-CV-232, 2010 WL 4449366, at *3 (S.D.N.Y. Oct. 13, 2010) ("Failure to plead damages is fatal to a breach of contract claim." (citing *LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*, 173 F.3d 454, 465 (2d Cir. 1999))).

### ii.    Failure to identify the Subcontract provisions Universal breached

Universal correctly argues that Integrated Construction has failed to specifically identify the provisions of the Subcontract that Universal has allegedly breached in connection with its ID Breach of Contract claim.  "In this Circuit and in New York State, courts have held that the plaintiff must at least have alleged which provisions in the contract were breached in order to survive a motion to dismiss on a breach of contract claim." *Zebra Strategies, Inc. v. Gonzalez-Nazario*, 764 F. Supp. 3d 144, 160 (S.D.N.Y. 2025) (quoting *Zucker v. HSBC Bank, USA, N.A.*, No. 21-CV-4825, 2022 WL 16755604, at *11 (E.D.N.Y. Aug. 1, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 16549134 (E.D.N.Y. Oct. 31, 2022)); *see Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 521 (S.D.N.Y. 2017) ("Importantly, a plaintiff must set forth the material terms of the agreement, including the particular terms that were allegedly breached by the defendants."); *see also Intercity Logistics LLC v. Wargo World USA, Inc.*, No. 24-CV-2138, 2025 WL 1043623, at *5 (E.D.N.Y. Apr. 8, 2025) (same); *Frontier Airlines, Inc. v. Aviation Holdings Ireland Ltd.*, 676 F. Supp. 3d 233, 245–46 (S.D.N.Y. 2023) (same); *Quintanilla  v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 350 (S.D.N.Y. 2021) ("To plausibly allege a breach of contract, a plaintiff must identify 'the specific provisions of the contract upon which liability is predicated.'" (quoting *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 85 (2d Cir. 2018))).

The Complaint only generally alleges Universal's "contractual duties" without any citation to the Subcontract or detailed allegation of Universal's obligations under the Subcontract

that the Court can look to as a reference to provisions found within the Subcontract. (*See generally* Compl.) Moreover, Integrated Construction's briefing provides no further clarity, only plainly stating the generalized allegations of the Complaint without any citation to the Complaint and/or the Subcontract and without further detail about Universal's obligations. (*See generally* Pl.'s Opp'n.) Even the Court's review of the Subcontract fails to further shed any light on this issue. (*See generally* Subcontract.) Without more, the Court finds Integrated Construction's pleading insufficient to withstand dismissal. *See AgroSci, Inc. v. Prescott*, No. 21-CV-1275, 2022 WL 17338799, at*7 (N.D.N.Y. Nov. 30, 2022) (finding that "although plaintiff references breach of a notice provision, the [a]mended [c]omplaint makes no other mention of such a provision, its corresponding section in the [agreement], or its specific terms" and even "the [c]ourt's own review of the [contract] did not even reveal a notice provision that would correspond with plaintiff's allegations"); *Quintanilla*, 541 F. Supp. 3d at 346 (dismissing breach of contract claim where the complaint did not identify which provision of the contract created a contractual obligation and "[e]ven after receiving [the defendant's] motion to dismiss, [the plaintiff] did not identify any specific term in the [contract]" in her briefing but instead "cites only her own allegations of [the defendant's] duties and obligations to [the p]laintiff").

      c.   **Unjust enrichment**

Universal argues that Integrated Construction's unjust enrichment cause of action is duplicative of its Performance Breach of Contract claim. (Defs.' Mem. 7–8.) First, Universal argues that Integrated Construction "asserts a breach of contract claim for the very same conduct" as the complained-of conduct in its claim for unjust enrichment. (*Id.* at 7.) "Specifically, [Integrated Construction]'s unjust enrichment claim is based upon Universal's 'material breaches of the Subcontract and abandonment of the Project,' which is exactly what Integrated Construction alleges in support of its [Performance Breach of Contract claim]." (*Id.*

(quoting Compl. ¶¶ 56–59).)  Second, Universal contends "[Integrated Construction]'s claim for unjust enrichment seeks an identical calculation of damages as to its [Performance] [B]reach of [C]ontract claim ('Compensatory damages, including costs and attorneys 'fees incurred for commencing this action, in an amount exceeding $75,000, exclusive of interest and cost')."  (*Id.* at 7–8 (quoting Compl. ¶ 11).)  Third, as to Integrated Construction's argument that its unjust enrichment claim is an alternative theory, Universal argues: (1) that "[n]othing contained in the Complaint says that the unjust enrichment claim is pled in the alternative"; (2) the claim is "premised entirely upon" the "exact conduct that [Integrated Construction] claims under its [Performance Breach of Contract cause of action]" and none of the case law cited by Integrated Construction "supports the proposition that [Integrated Construction] can maintain a claim . . . [that] is entirely duplicative of its [Performance Breach of Contract] claim"; and (3) "when an express agreement (*i.e.*, the Subcontract) governs the subject matter of [Integrated Construction]'s claims, a cause of action for unjust enrichment must be dismissed as a matter of law."  (Defs.' Reply 6–7.)

Integrated Construction argues that it may plead unjust enrichment as a viable alternative theory of recovery.  (Pl.'s Opp'n 7–9.)  First, Integrated Construction contends that "under New York law, plaintiffs may plead unjust enrichment in the alternative, particularly where there is any dispute as to the scope, validity or applicability of the contract" — which is the case in this action because "Defendants themselves dispute whether [Integrated Construction] has identified applicable contractual provisions governing the claims."  (*Id.* at 7–8.)  Integrated Construction argues "[t]hat very contention creates ambiguity over whether the conduct at issue is covered by the Subcontract," and "[s]uch factual disputes are precisely why courts preserve unjust enrichment claims as a protective theory of recovery."  (*Id.* at 8.)  Second, Integrated Construction contends that "dismissal at this early stage would be premature" as "[Integrated

Construction]'s unjust enrichment claim provides an essential equitable safety net to prevent Universal from retaining funds without providing the agreed-upon services, particularly if the Court later determines that the Subcontract does not cover the specific wrongful conduct."[9] (*Id.* at 8–9.)

"To recover under a theory of unjust enrichment under New York law, a litigant must show 'that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered.'" *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 201 (2d Cir. 2023) (quoting *Columbia Mem'l Hosp. v. Hinds*, 38 N.Y.3d 253, 275 (2022)); *see Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 385 (2d Cir. 2025) (quoting same); *Cable First Constr., Inc. v. Lepetiuk Engr. Corp.*, No. 24-871-CV, 2025 WL 2016277, at *2 (2d Cir. July 18, 2025) (summary order) (quoting *Rynasko*, 63 F.4th at 201); *Courchevel 1850 LLC v. Wisdom Equities LLC*, 846 F. App'x 33, 36 (2d Cir. 2021) ("To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006))); *Myun-Uk Choi v. Tower Res. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (listing the same three requirements for an unjust enrichment claim). "[T]he plaintiff's allegations must show that the defendant 'received some benefit' from the plaintiff" that is "specific and direct"; "'some indirect benefit' will not be enough to support an unjust enrichment claim." *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe I*"), No. 23-8083, 2024 WL 4315128, at *3 (2d Cir. Sep. 27, 2024) (summary order) (quoting

---

[9] In its opposition brief, Integrated Construction does not address whether its claim for unjust enrichment is duplicative of its Performance Breach of Contract claim, but instead focuses on its argument that the claim survives dismissal as an alternative theory of recovery. (*See generally* Pl.'s Opp'n; *see* Defs.' Reply 5.)

*Kaye v. Grossman*, 202 F.3d 615, 616 (2d Cir. 2000)); *see also Hudson Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642, 2023 WL 6311218, at *6 (S.D.N.Y. Sep. 28, 2023) ("To prove a defendant was enriched, 'a plaintiff must show that the defendant actually received a benefit' that is both 'specific and direct.'" (quoting *Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 124 (S.D.N.Y. 2023))).  An unjust enrichment claim "may be premised on deceptive conduct." *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 219 (N.D.N.Y. 2023) (quoting *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020)); *see also Leboeuf v. Edgewell Pers. Care Co.*, No. 22-CV-642, 2023 WL 5432265, at *16 (N.D.N.Y. Aug. 23, 2023) (same); *Cox v. Microsoft Corp.*, 778 N.Y.S.2d 147, 149 (App. Div. 2004) ("[The] [p]laintiffs' allegations that [the defendant's] deceptive practices caused them to pay artificially inflated prices for its products state a cause of action for unjust enrichment.").  However, "unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Mancuso*, 454 F. Supp. 3d at 208 (alteration in original) (quoting *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012)); *see also Ham v. Lenovo (U.S.) Inc.*, 664 F. Supp. 3d 562, 584 (S.D.N.Y. 2023) ("Where an 'unjust enrichment claim is premised on the same factual allegations as those supporting [a plaintiff's] other claims, and [a plaintiff] ha[s] not alleged distinct damages with respect to this claim,' then a plaintiff's unjust enrichment claim will be dismissed." (alterations in original) (quoting *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 115 (S.D.N.Y. 2021))).  "Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (App. Div. 2008)); *see In re 305 E. 61st Street Grp. LLC*, 130 F.4th 272, 282 (2d Cir. 2025) (quoting *id.*); *Sound Around, Inc. v. Moises Friedman*, No. 24-CV-986, 2026 WL 972984, at *14 (S.D.N.Y.

Apr. 10, 2026) (quoting same); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *14 (S.D.N.Y. Mar. 21, 2022) (explaining that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim" and "[t]wo claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages'" (alterations in original) (first quoting *Corsello*, 18 N.Y.3d at 790; and then quoting *NetJets Aviation, Inc.*, 537 F.3d at 175)); *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 246 (S.D.N.Y. 2022) (A claim for unjust enrichment "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." (quoting *Corsello*, 18 N.Y.3d at 790)); *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) ("[U]njust enrichment claims should be dismissed 'where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.'" (quoting *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018))); *see also Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust enrichment claim because it was duplicative of the plaintiff's other dismissed claims).

Integrated Construction's unjust enrichment claim is duplicative of its Performance Breach of Contract claim and must be dismissed — the claims arise from the same facts and allege the same damages. *See In re 305 E. 61st Street Grp. LLC*, 130 F.4th at 282; *Ham*, 664 F. Supp. 3d at 584. In pleading its unjust enrichment claim in the Complaint, Integrated Construction "repeats and realleges the preceding allegations" and adds that "[b]y virtue of the foregoing, Universal has been unjustly enriched to [Integrated Construction]'s detriment." (Compl. ¶¶ 56–57.) Integrated Construction adds no further allegations in relation to its unjust enrichment claim and instead appears to rely solely on the allegations it pled for its Performance Breach of Contract claim. As to damages, the Complaint alleges "[a]s a direct and proximate

result of Universal's conduct, Integrated Construction has suffered damages" which "Universal is obligated in equity to compensate [Integrated Construction] for the increase costs and attorney's fees [Integrated Construction] has been forced to incur as a result of Universal's material breaches of the Subcontract and abandonment of the Project." (*Id.* ¶¶ 58–59.) Integrated Construction is explicitly alleging damages for unjust enrichment that arose out of Universal's alleged breach of the Subcontract and for which Integrated Construction contends it is also entitled to under its Performance Breach of Contract cause of action. (*Compare* Compl. ¶ 51 to ¶ 59.) Therefore, the Court finds Integrated Construction's unjust enrichment claim to be duplicative of its Performance Breach of Contract claim. *See Demarco v. DNVB, Inc. (Thursday Boot Company)*, No. 25-CV-3076, 2025 WL 4378637, at *9 (S.D.N.Y. Dec. 5, 2026) (finding that where the plaintiffs did "not dispute that they had a contract with [the d]efendant, [the p]laintiffs only remedy is the contractual damages to the extent that the defendant breached the [contract]" (third alteration in original)), *report and recommendation adopted in part*, 2026 WL 203742 (S.D.N.Y. Jan. 26, 2026); *SM Premium Imports LLC v. Ctr. Vinicole Champagne Nicolas Feuillatte*, No. 25-CV-2248, 2025 WL 2916152, at *4 (S.D.N.Y. Oct. 14, 2025) (dismissing unjust enrichment claim where it "rest[ed] on the same factual allegations as [the party's] breach of contract claim" because "where a relationship between parties is 'contractual in nature' and a 'claim for unjust enrichment is based on the same set of facts and seeks to recover the value of enrichment based on the same [issues] as the claims for breach of contract[,] an unjust enrichment claim is precluded as duplicative'" (third and fourth alterations in original) (internal quotation marks and citation omitted)); *Empire Fire & Marine Ins. Co. v. Edge Auto, Inc.*, No. 21-CV-5413, 2022 WL 17779117, at *5–6 (E.D.N.Y. Sep. 15, 2022) (finding unjust enrichment claim duplicative of the plaintiff's breach of contract claim where the parties do not dispute they entered into "express written contracts . . . which govern [the p]laintiff's claims"

26

and "[the p]laintiff's unjust enrichment claim arises from the same facts and seeks the same relief as its breach of contract claim"), *report and recommendation adopted*, Order Adopting Report & Recommendation (E.D.N.Y. Oct. 12, 2022).

In fact, Integrated Construction does not dispute that its unjust enrichment claim is duplicative of its Performance Breach of Contract claim. *See supra* footnote 9. Instead, Integrated Construction argues it is entitled to plead alterative theories of liability. While "[i]t is certainly true . . . that [the plaintiff] may plead unjust enrichment in the alternative . . . it is equally true that, even pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). The New York Court of Appeals has made clear that "unjust enrichment is not a catchall cause of action to be used when others fail." *Corsello*, 18 N.Y.3d at 790. "Relying on *Corsello*, courts . . . have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (collecting cases). Integrated Construction has failed to explain why or how its unjust enrichment claim is not duplicative of its Performance Breach of Contract claim. *See SM Premium Imports LLC*, 2025 WL 2916152, at *4 (finding the argument that a party may plead unjust enrichment in the alternative at the motion to dismiss stage of the litigation as unpersuasive under New York and Second Circuit case law); *Nelson*, 246 F. Supp. 3d at 679 (dismissing unjust enrichment claim which was duplicative of the plaintiff's breach of contract claim over the plaintiff's objection that it is entitled to plead unjust enrichment in the alternative).

Further, Integrated Construction argues that it may bring an unjust enrichment claim in the alternative where "there is any dispute as to the scope, validity, or applicability of the contract." (Pl.'s Opp'n 7.)  However, case law supports that "a plaintiff can plead unjust enrichment in the alternative if there is a 'bona fide dispute as to the existence of a contract or whether the scope of an existing contract covers the disagreement between the parties.'"  *Hous. & Redevelopment Ins. Exch. v. Guy Carpenter & Co.,* LLC, No. 24-CV-2412, 2026 WL 572941, at *7 (S.D.N.Y. Feb. 28, 2026) (quoting *Pauwels v. Deloitte* LLP, 83 F.4th 171, 188 (2d Cir. 2023)); *see In re General Motors LLC Ignition Switch Lit.*, 257 F. Supp. 3d 372, 433 (S.D.N.Y. 2017) (same).  To support its assertion, Integrated Construction cites to *IIG Capital LLC v. Archipelago, L.L.C.*, 829 N.Y.S.2d 10 (App. Div. 2007) but incorrectly extends the court's holding.  (*See* Pl.'s Opp'n 7.)  The court found that "[w]hile the existence of a valid and enforceable contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter . . . , where there is a bona fide dispute *as to the existence of a contract or where the contract does not cover the dispute in issue*, the plaintiff can proceed" with its unjust enrichment claim.  *IIG Cap. LLC*, 829 N.Y.S.2d at 13–14 (emphasis added) (internal quotation marks and citations omitted).  Integrated Construction also cites to *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey*, 448 F.3d 573, 586–87 (2d Cir. 2006) which does not support its arguments.  (*See* Pl.'s Opp'n 7.)  Instead, the case held that the plaintiff's unjust enrichment claim must be dismissed as a contractual relationship between the plaintiff and defendants did exist.  *Beth Israel Medical Ctr.*, 448 F.3d at 586–87.

While Integrated Construction does not dispute that the parties entered into the Subcontract, Integrated Construction argues that "Defendants themselves dispute whether [Integrated Construction] has identified applicable contractual provisions governing the

28

claims"[10] which "creates ambiguity over whether the conduct at issue is covered by the Subcontract." (Pl.'s Opp'n 8.)  However, nowhere in Defendants' briefing do they dispute that the Subcontract: (1) exists; (2) is a valid agreement; and/or (3) that the Subcontract does not cover the disagreement between the parties.  (*See generally* Defs.' Mem.; Defs.' Reply.)  Further, Integrated Construction includes no citation to any of Defendant's filings to support its assertion. In fact, implicit in Defendants' concession not to seek dismissal of Integrated Construction's Performance Breach of Contract cause of action is Defendants' lack of argument that the Subcontract validly exists and/or governs the parties' disagreement.  Even Integrated Construction's cited case law does not support its arguments.  Integrated Construction first cites to *Curtis Props Corporation v. Greif Companies*, 653 N.Y.S.2d 569 (App. Div 1997), which only explains the general rule that "a party is not precluded from proceeding on both breach of contract and quasi-contract theories where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." *Id.* at 239.  (Pl.'s Opp'n 7–8.) Integrated Construction also cites to *St. John's University v. Bolton*, 757 F. Supp. 2d 144, 183 (S.D.N.Y. 2010) in which, it argues, the court allowed the unjust enrichment claim to proceed where there was a factual dispute as to whether the contract covered the alleged misconduct. (Pl.'s Opp'n 7–8.)  While Integrated Construction is ultimately correct, the circumstances of this case are easily differentiated.  In *St. John's*, the defendants disputed the "scope and enforceability" of the agreements and the terms within which required the court to "interpret [the

---

    [10]  The Court notes that Integrated Construction's assertion that "Defendants themselves dispute whether [Integrated Construction] has identified applicable contractual provisions governing the claims," (Pl.'s Opp'n 8), could also be interpreted to mean that the Defendants dispute whether Integrated Construction has adequately identified specific Subcontract provisions which it alleges Defendants breached.  This alternative argument would relate to the sufficiency of the Complaint and ultimately Defendants' motion to dismiss.  Defendants make this argument with regard to each cause of action and thus the Court addresses each in the relevant cause of action discussion.

agreements] to determine whether the unjust enrichment claims [arose] out of the same subject matter." 757 F. Supp. 2d at 184–85. Because this was inappropriate at the motion to dismiss stage, the court denied the motion to dismiss. *Id.* In this action, the Court need not review the agreement and terms to determine whether the Subcontract governs the dispute — Defendants do not dispute this nor does the Court believe this to be the case as the Subcontract governs the Performance Breach of Contract claim brought by Integrated Construction involving Defendants failure to abide by its obligations related to the Project. Instead, Integrated Construction's main contention is that Defendants' conduct violated the Subcontract, which is duplicative of its Performance Breach of Contract claim. *See Gan v. GSUIG Real Estate Member LLC*, 797 F. Supp. 3d 69, 113–14 (E.D.N.Y. 2025) (dismissing unjust enrichment claim as duplicative where the plaintiffs did not argue that the contract was invalid, but instead that the defendant's conduct violated the agreement), *aff'd*, No. 25-2313, 2026 WL 1145891 (2d Cir. Apr. 28, 2026). Therefore, the Court dismisses Integrated Construction's unjust enrichment claim.

### d.    Breach of the implied covenant of good faith and fair dealing

Universal argues Integrated Construction's claim for breach of the covenant of good faith and fair dealing should also be dismissed as duplicative. (Defs.' Mem. 8–9.) Universal argues that the claim "is based on the same operative facts and conduct as the [Performance] [B]reach of [C]ontract claim." (*Id.* at 8.) Specifically, Integrated Construction's covenant of good faith and fair dealing claim uses "nearly identical language" to Integrated Construction's Performance Breach of Contract cause of action, "parrots" the same alleged harm, and "ultimately relates to [Universal's] performance under the Subcontract." (*Id.*; *see also* Defs.' Reply 7–8.)

Integrated Construction contends that the Complaint sufficiently alleges a breach of the covenant of good faith and fair dealing. (Pl.'s Opp'n 9–10.) First, "[Integrated Construction] alleges distinct conduct" to its Performance Breach of Contract claim because Universal's

conduct "frustrated [Integrated Construction]'s contractual expectations even absent violation of any specific provision." (*Id.*)  Specifically, Integrated Construction argues that Universal's failure to communicate, obstruction of scheduling, and unilateral abandonment of its duties "are not coextensive with breach of any specific Subcontract term but represent a broader failure to act in good faith and fair dealing during contract performance." (*Id.* at 10.)  Therefore, Integrated Construction's covenant claim "addresses misconduct that undermined the contract's spirit and deprived [Integrated Construction] of its benefits." (*Id.*)  Second, Integrated Construction argues that "arbitrary or irrational exercise of contractual discretion also constitutes a breach of the implied covenant." (*Id.* at 9.)

"Under New York law, 'implicit in every contract is a covenant of good faith and fair dealing[,] which encompasses any promises that a reasonable promisee would understand to be included.'" *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (quoting *Spinelli v. Nat'l Football League*, 903 F.3d 185, 205 (2d Cir. 2018)); *see also Aquino v. Alexander Cap. LP*, Nos. 23-1109, 23-1164, 2024 WL 2952497, at *4 (2d Cir. June 12, 2024) (summary order) (quoting same).  "'[N]either party to a contract shall do anything [that] has the effect of destroying or injuring the right of the other party to receive the fruits of the contract,' or to violate the party's 'presumed intentions or reasonable expectations.'" *Spinelli*, 903 F.3d at 205 (alterations in original) (quoting *M/A-COM Sec. Corp. v. Galesi*, 904 F.2d 134, 136 (2d Cir. 1990)); *see also Aquino*, 2024 WL 2952497, at *4 (quoting *id.*).

The covenant of good faith and fair dealing "only impose[s] an obligation consistent with other mutually agreed upon terms in the contract.  It does not add [ ] to the contract a substantive provision not included by the parties." *Woodard v. Reliance Worldwide Corp.*, 819 F. App'x 48, 49 (2d Cir. 2020) (alterations in original) (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198–99 (2d Cir. 2005)); *see Gravitas Search Partners LLC v. Deutsch*, No. 24-CV-2683,

2025 WL 2243720, at *12 (S.D.N.Y. Aug. 6, 2025) ("The implied covenant of good faith and fair dealing 'does not add obligations beyond those set forth in the agreement; rather, it protects a party to a contract from improper conduct that subvert[s] the contract itself.'" (alteration in original) (quoting *Hard Rock Café Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011))); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 261 F.R.D. 4, 9 (W.D.N.Y. 2009) ("The covenant, however, only protects the bargained-for terms of the agreement and is not 'designed to enlarge or create new substantive rights between the parties.'" (quoting *Ferguson v. Lion Holding, Inc.*, 478 F. Supp. 2d 455, 479 (S.D.N.Y. 2007))); *D & L Holdings, LLC v. RCG Goldman Co.*, 734 N.Y.S.2d 25, 31 (App. Div. 2001) ("The covenant of good faith and fair dealing cannot be used to add a new term to a contract, especially to a commercial contract . . . ."); *see also LightSquared Inc. v. Deere & Co.*, Nos. 13-CV-8157, 13-CV-5543, 2015 WL 585655, at *11 (S.D.N.Y. Feb. 5, 2015) ("The implied covenant of good faith and fair dealing 'is not a means to add new terms to the agreement; it merely requires that the parties behave fairly and reasonably in the performance and enforcement of the contract.'" (quoting *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009))), *aff'd sub nom.*, *Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653 (2d Cir. 2015). "Furthermore, the implied covenant 'does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'" *Woodard*, 819 F. App'x at 49 (quoting *M/A-COM*, 904 F.2d at 136); *see also LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) ("[T]he implied covenant of good faith cannot create duties that negate explicit rights under a contract."); *Banco San Juan Internacional, Inc. v. Fed. Rsrv. Bank of N.Y.*, 762 F. Supp. 3d 247, 285 (S.D.N.Y. 2025) (quoting *LJL 33rd St. Assocs., LLC*, 725 F.3d at 195), *appeal docketed*, No. 25-1144 (2d Cir. May 5, 2025).

32

Where a party has discretion in performance under a contract, New York law "includes a promise not to act arbitrarily or irrationally in exercising its discretion." *Rynasko*, 63 F.4th at 200 (citing *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)); *see also Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 810 (2d Cir. 2014) (explaining that "[u]nder New York law all contracts that confer discretion include an implied promise that neither party will 'act arbitrarily or irrationally' in exercising that discretion" (quoting *Dalton*, 87 N.Y.2d at 389)); *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) ("Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." (quoting *Dalton*, 87 N.Y.2d at 389)). "Courts have equated the covenant of good faith and fair dealing with an obligation to exercise that discretion 'reasonably and with proper motive, . . . not . . . arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.'" *Fishoff*, 634 F.3d at 653 (alterations in original) (quoting *In re Kaplan*, 143 F.3d 807, 819 (3d Cir. 1998)); *see also Valley Stream Foreign Cars, Inc. v. Am. Honda Motor Co.*, 209 F. Supp. 3d 547, 555 (E.D.N.Y. 2016) (explaining that the implied covenant requires parties to exercise discretion in "a manner inconsistent with . . . reasonable expectations" (quoting *Fishoff*, 634 F.3d at 653)); *Sec. Plans*, 769 F.3d at 817–18 (explaining that a party must "demonstrate something more" than "evidence that the defendant's actions were negligent or inept" to state a claim for breach of the implied covenant, such as a party "act[ing] arbitrarily or irrationally in exercising [its] discretion" (citation omitted)). "[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the [party] acts in accordance with the express terms of the contract." *JN Contemp. Art*, 29 F.4th at 128 (first alteration in original) (quoting 23 *Williston on Contracts* § 63:22 (4th ed. 2021)); *see also Access Bus. Grp. Int'l, LLC v. Refresco Beverages U.S. Inc.*, No. 21-CV-10779, 2023 WL 372883, at *3

(S.D.N.Y. Jan. 24, 2023) (dismissing the defendant's breach of contract counterclaim because "[t]here can be no breach of the implied [covenant] where the contract expressly permits the actions being challenged" (first alteration in original) (quoting *JN Contemp. Art*, 29 F.4th at 128)).

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach-of-contract claim, based upon the same facts, is also pled." *Creaven*, 2023 WL 4247213, at *5 (alteration omitted) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). Therefore, "[w]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." *Bus. Exposure Reduction Grp. Assocs., LLC v. Pershing Square Cap. Mgmt., L.P.*, No. 21-CV-1980, 2022 WL 950959, at *3 (2d Cir. Mar. 30, 2022) (summary order) (quoting *Cruz*, 720 F.3d at 125); *see Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 486 (E.D.N.Y. 2020) ("[A] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." (quoting *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020))); *see also State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists, P.C.*, No. 21-CV-5523, 2025 WL 1166982, at *7 (E.D.N.Y. Mar. 26, 2025) (quoting same). "However, 'to avoid redundancy, claims of breach of the implied covenant must be premised on a distinct set of facts from those underlying a claim for breach of contract." *Exist Inc. v. Tokio Marine Am. Ins. Co.*, No. 22-CV-1679, 2025 WL 252912, at *10 (S.D.N.Y. Jan. 21, 2025) (quoting *Polcom USA, LLC v. Affiliated FM Ins. Co.*, 551 F. Supp. 3d 290, 297 (S.D.N.Y. 2021)), *appeal filed*, No. 25-402 (2d Cir. Feb. 20, 2025); *see also Hochfelder v. Pac. Indem. Co.*, No. 22-CV-2012, 2023 WL 2430497, at *3 (S.D.N.Y. Mar. 9, 2023) (same); *Fleisher v. Phoenix*

34

*Life Ins. Co.*, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) (quoting *Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008)) (same).

Integrated Construction's claim for breach of the implied covenant is redundant of its Performance Breach of Contract claim because it is based upon the same facts. Integrated Construction's implied covenant cause of action stems from Universal's alleged breaches of the Subcontract and other wrongdoing during the Project which it alleges under its Performance Breach of Contract cause of action. Specifically, Integrated Construction alleges Universal breached the implied covenant by: (1) failing to communicate; (2) obstructing scheduling; and (3) unilaterally abandoning its duties. (Pl.'s Opp'n 9–10; Compl. ¶ 62.) In comparison, the allegations in the Complaint for Integrated Construction's Performance Breach of Contract cause of action alleges that Universal breached its obligations under the Subcontract by: (1) failing to respond to Integrated Construction's inquiries; (2) failing to provide schedules and lookaheads; (3) refusing to perform the agreed upon work under the Subcontract; (4) performing work incorrectly, necessitating rework; and (5) abandoning the Project. (Compl. ¶¶ 49–50.) Not only are the claims indistinguishable, but the underlying facts to both claims are identical. Therefore, the claim is duplicative of Integrated Construction's Performance Breach of Contract cause of action. *See Negrete v. Citibank, N.A.*, 759 F. App'x. 42, 47 (2d Cir. 2019) (affirming dismissal of implied covenant claim which was "expressly based on the same facts underlying the breach of contract claims); *SM Premium Imports LLC*, 2025 WL 2916152, at *4 (holding the plaintiff's cause of action was duplicative because the "conduct and resulting injury alleged in the second cause of action for breach of the covenant of good faith and fair dealing [was] identical to those alleged in the first . . . cause[] of action alleging breach of contract" (second and third alterations in original) (internal quotation marks and citation omitted)); *Gan*, 797 F. Supp. 3d at 103 (dismissing the plaintiffs' claim for breach of the implied covenant because "[i]n sum and

35

substance" the allegations "are substantially similar to [the plaintiffs'] allegations that [the defendant] breached the [contract]").

In addition, Integrated Construction seeks the exact same damages: "as a direct and proximate result of Universal's conduct, [Integrated Construction] has suffered damages in an amount exceeding $75,000.00, exclusive of interest and costs, including but not limited to additional costs to hire replacement subcontracts, delays, rework, back-charges, other related expenses, and attorneys' fees." (*Compare* Compl. ¶ 51 (Performance Breach of Contract) to ¶ 63 (breach of the implied covenant of good faith and fair dealing).) These identical allegations further support finding Integrated Construction's breach of the covenant and good faith and fair dealing claim as redundant. *See SM Premium Imports LLC*, 2025 WL 2916152, at *4 ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" (quoting *Deer Park Enters., LLC v. Ail Sys., Inc.*, 870 N.Y.S.2d 89, 90 (App. Div. 2008))); *Benihana of Tokyo, LLC*, 259 F. Supp. 3d at 37 (dismissing claim where the plaintiff "seeks identical damages" for its claim for breach of the implied covenant as its claim for breach of contract).

Integrated Construction argues that it alleges "distinct conduct" because Universal's actions "frustrated [Integrated Construction]'s contractual expectations" and "represent a broader failure to act in good faith and fair dealing during contract performance." (Pl.'s Opp'n 9–10.) Integrated Construction's cited case law provides no support. (*See id.* at 9 (first citing *Rad & D'Aprile, Inc. v. Arnell Constr. Corp.*, 164 N.Y.S.3d 653, 655–56 (App. Div. 2022) (affirming denial of summary judgment on the plaintiff's claim for breach of the implied covenant where there was no breach of contract claim for it to be duplicative of as the court affirmed the prior dismissal of the plaintiff's claim for breach of contract); and then citing *Anexia, Inc. v. Horizon*

*Data Sols. Ctr., LLC*, 165 N.Y.S.3d 831 (Sup. Ct. 2022) (finding implied covenant counterclaim as independent because the plaintiff "exercise[d] a contractual right as party of a scheme to realize gains that the contract implicitly denied or to deprive the other party of the fruit of its bargain")).)  In addition, Integrated Construction argues "arbitrary or irrational exercise of contractual discretion also constitutes a breach of the implied covenant," (*id.* at 9–10 (first citing *Dalton v. Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995); and then citing *Richbell Info. Servcs., Inc. v. Jupiter Partners, L.P.*, 765 N.Y.S.2d 575 (App. Div. 2003)), but the Complaint alleges no "arbitrary or irrational exercise of contractual discretion" by Universal which harmed Integrated Construction independent of the alleged Performance Breach of Contract.  Ultimately, Integrated Construction complains that it suffered consequences from Universal's breach of the Subcontract — but this is insufficient to plead a claim for the implied covenant that is not duplicative of its Performance Breach of Contract claim.  *See Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17-CV-1388, 2018 WL 1382105, at *13 (S.D.N.Y. Mar. 16, 2018) (dismissing implied covenant claims because the "[p]laintiffs argue only that [d]efendant breached this covenant in failing to fulfill its contractual obligations"); *Benihana of Tokyo, LLC*, 259 F. Supp. 3d at 37 (dismissing implied covenant claim where the plaintiff "faults [the defendant] for failing to carry out its duty to abide by the parties' [contract]"); *cf. Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 378–79 (N.D.N.Y. 2019) (finding the implied covenant claim not duplicative of the breach of contract claim because the claim "rest[ed] on a different set of supporting facts from the express breach of contract claim" and the plaintiff's allegations involved more than just consequences of the defendant's alleged breach of contract).

The Court therefore dismisses as duplicative Integrated Construction's claim for breach of the implied covenant of good faith and fair dealing.

37

### e.  Fraud against Gracin

Gracin argues that Integrated Construction fails to state a claim against him for fraud under Rule 9(b) of Federal Rules of Civil Procedure.  (Defs.' Mem. 9–11.)  First, he contends that "nowhere in the Complaint does [Integrated Construction] reference that any fraud was committed by Gracin at the time Universal and [Integrated Construction] entered into the Subcontract."  (*Id.* at 10.)  "Rather, the core allegations that form [Integrated Construction]'s fraud cause of action against Gracin is that he did not comply with the terms of the Subcontract, which New York courts have held is insufficient to support a fraud claim."  (*Id.*)  Second, Gracin argues Integrated Construction's fraud claim "consists of bald, conclusory allegations that fall woefully short of complying with the heightened pleading standard as prescribed by Rule 9(b)."  (*Id.* at 10.)  He contends that the Complaint "does not (i) identify any allegedly fraudulent statements made by Gracin to [Integrated Construction]; and (ii) indicate where and when the alleged material misrepresentation was made by Gracin[] (*i.e.*, a single date, time or location when Gracin made an allegedly fraudulent statement to [Integrated Construction])."  (*Id.*)  "Instead, the Complaint simply references representations and concealments that 'Gracin' made in general."  (*Id.*)

Integrated Construction argues that the allegations in the Complaint sufficiently state a claim for fraud against Gracin.  (Pl.'s Opp'n 10–14.)  First, Integrated Construction contends that "Defendants' attempt to characterize the fraud as indistinguishable from breach must fail" because "Gracin's statements falsely depicted an existing operational capacity and intent to perform that did not, in fact exist" at the time of the contract.  (*Id.* at 13.)  Integrated Construction argues that New York case law "recognizes [that] such statements [are] distinct from nonperformance and therefore not subject to dismissal as duplicative."  (*Id.* (citing *Manas v. VMS Associates, LLC*, 863 N.Y.S.2d 4, 7 (App. Div. 2008).)  Second, Integrated Construction

38

argues that the allegations in the Complaint show that "Gracin's false assurance induced [Integrated Construction] to *continue relying* on Universal and delayed replacement efforts, causing distinct damages." (*Id.* at 11 (emphasis added).) Integrated Construction contends that such claims are "not barred by the contract" and "survive where misrepresentations are collateral to the contract," as supported in *Integrated Construction Enterprises, Inc.*, 2020 WL 614991. (*Id.*) Specifically, Integrated Construction argues "Gracin's misrepresentations were not merely promissory statements about future conduct, but false statements of existing fact intended to mislead [Integrated Construction] and delay corrective steps." (*Id.* at 12.) Third, Integrated Construction argues that Rule 9(b) "requires particularity to avoid baseless accusations of fraud, but it does not impose an evidentiary burden inappropriate at the pleading stage." (*Id.*) Instead, Integrated Construction states that "[c]ourts in this Circuit recognize that plaintiffs need only specify the who, what, when, where, and how of the alleged fraud to survive dismissal" which it "does [] with clarity." (*Id.*) The "Complaint identifies Gracin as the speaker, outlines multiple misrepresentations regarding Universal's staffing and scheduling capacity, and contextualizes them within specific dates and communications made during project execution." (*Id.* (citing Compl. ¶¶ 64–75).) Further, Integrated Construction contends "Gracin made these statements even as Universal was actively disengaging from its contractual obligations — facts uniquely within Universal's control," which "supports the inference of scienter." (*Id.*)

It is unclear to the Court whether Integrated Construction brings a cause of action against Gracin for fraudulent inducement based on misrepresentations made during the formation of the Subcontract or for common law fraud based on misrepresentations made during the course of performance of the Subcontract, or both. The Complaint alleges that "Gracin made certain representations . . . [i]n order to induce [Integrated Construction] to enter into an agreement with Universal" but also states that those representations were made during a conversation Gracin had

with Sid Raman of Integrated Construction "[d]uring the course of the Project."  (Compl. ¶¶ 66–75.)  While the allegations in the Complaint mainly discuss Integrated Construction's decision to enter into the Subcontract, Integrated Construction's briefing discusses Gracin's alleged misrepresentations throughout the project and those during Gracin's conversation with Raman which indicate "Universal's intent and ultimate abandonment of the [P]roject."  (Pl.'s Opp'n 11.)  In addition, Integrated Construction argues that "[f]raudulent inducement claims survive where misrepresentations are collateral to the contract" and relies on *Integrated Construction Enterprises, Inc.*, 2020 WL 614991, which denied summary judgment to the defendant on Integrated Construction's claim for fraud during performance of the subcontract but granted summary judgment to the defendant on Integrated Construction's claim for fraudulent inducement.  (*Id.* at 11–12.)  Because of the lack of clarity, the Court addresses both types of claims.  Nevertheless, both claims fail and must be dismissed.

### i.   Fraudulent inducement

Under New York law, the elements for fraudulent inducement are "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages."  *Rowe I*, 2024 WL 4315128, at *4 (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012)); *NRW, Inc. v. Bindra*, 775 F. App'x 22, 24 (2d Cir. 2019) (listing the elements for fraudulent inducement as "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance" (quoting *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006))); *see also Ipcon Collections*, 698 F.3d at 62 (stating the elements of fraudulent inducement).  A party must plead "specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and

40

specific conduct at issue." *Johnson*, 660 F.3d at 143 (first citing Fed. R. Civ. P. 9(b); and then citing *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 51 (2d Cir. 1995)); *see State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (quoting *id.*); *see also Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, No. 23-1312, 2024 WL 4764060, at *3 (2d Cir. Nov. 13, 2024) (summary order) (quoting *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022)) (same); *Compass-Charlotte 1031, LLC v. Prime Cap. Ventures, LLC*, No. 24-CV-55, 2024 WL 3163238, at *6 (N.D.N.Y. June 24, 2024) (quoting *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 352) (same).

Under New York law, "allegations that [a] defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud claim]." *Keystone Foods Holdings Ltd. v. Tyson Foods, Inc.*, No. 22-1113, 2023 WL 3477157, at *1 (2d Cir. May 16, 2023) (summary order) (alterations in original) (quoting *N.Y. Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 318 (1995)); *see also Spinelli* 903 F.3d at 209 ("Where a plaintiff alleges . . . that the defendant simply misrepresented its intent to perform under a contract, no separate claim for fraud will lie, and the plaintiff must instead bring an action for breach of contract." (citing *Wall*, 471 F.3d at 416)). In addition, an allegation of fraudulent inducement "may not be used as a means of restating what is, in substance, a claim for breach of contract." *Keystone Foods*, 2023 WL 3477157, at *1 (quoting *Wall*, 471 F.3d at 416). This is because "New York law does not recognize breach of contract claims that . . . masquerad[e] as claims" of fraud in the inducement. *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 355 (citation omitted); *see also Wall*, 471 F.3d at 416 (explaining that "[o]ne reason for this rule is to prevent parties from avoiding the Statute of Frauds by recharacterizing their contract claims as torts" (quoting *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir. 1986))). In order to establish fraudulent inducement based "upon an insincere promise of future performance," the allegedly false promise must be

41

"collateral to the contract" and cannot "concern[ ] the performance of the contract itself." *Fairway Prime Estate Mgmt., LLC v. First Am. Int'l Bank*, 952 N.Y.S.2d 524, 527 (App. Div. 2012) (quoting *HSH Nordbank AG v. UBS AG*, 941 N.Y.S.2d 59, 74 (App. Div. 2012)); *E. Effects, Inc. v. 3911 Lemmon Ave. Assocs., LLC*, 202 N.Y.S.3d 105, 105 (App. Div. 2024) ("A fraudulent inducement cause of action is duplicative of a breach of contract claim where it is based on the same facts, seeks the same damages, and fails to allege a breach of an independent duty outside of the contract" and "is subject to dismissal when it is duplicative of a contract claim, such as where there is an insincere promise of future performance of the contract itself." (citations omitted)); *see also Rowe I*, 2024 WL 4315128, at *5 ("To adequately plead the first element of a fraudulent inducement claim, the material misrepresentation must be 'collateral to the contract it induced.'" (quoting *Wall*, 471 F.3d at 416)); *Spinelli*, 903 F.3d at 209 ("Misrepresentations made to induce a party to enter a contract are not actionable as fraud, however, unless they are 'collateral' to the contract induced." (citation omitted)); *Wall*, 471 F.3d at 416 (noting that fraudulent inducement may be based on a promise "not contained in the written agreement," which was made with an intention not to perform (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986))).

Because a fraudulent inducement claim cannot simply restate a breach of contract claim, to state a claim for fraudulent inducement, a party must allege: "(i) . . . a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 352 (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)) (other citations omitted); *Compass-Charlotte 1031*, 2024 WL 3163238, at *6 (quoting *State St. Glob. Advisors Tr. Co.*, 431 F. Supp. 3d at 352) (same); *see A Star Grp., Inc. v.*

42

*Northland Energy Trading, LLC*, No. 21-797, 2023 WL 8613525, at *2 (2d Cir. Dec. 13, 2023) (summary order) ("Under New York law, a fraudulent inducement claim is independent of a related claim of breach of contract if it 'allege[s] misrepresentations of present fact, not merely misrepresentations of future intent to perform under the contract,' and the alleged breach of duty is 'separate from or in addition to the contract duty.'" (alteration in original) (quoting *Wyle Inc. v ITT Corp.*, 13 N.Y.S.3d 375, 376–77 (App. Div. 2015))).[11]

First, Integrated Construction has failed to allege with specificity any misrepresentation made by Gracin before the formation of the Subcontract. *See Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-CV-4650, 2022 WL 912965, at *7 (S.D.N.Y. Mar. 29, 2022) ("A successful fraudulent inducement claim should be 'premised on misrepresentations [of material fact] that were made before the formation of the contract and that induced the plaintiff to enter the contract.'" (alterations in original) (quoting *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994))); *see Lovely Peoples Fashion, Inc. v. Magna* Fabrics., No. 95-CV-8450, 1998 WL 422482, at *9 (S.D.N.Y. July 22, 1998) ("Under New York law, in order to maintain a cause of

---

[11] Integrated Construction solely argues that its fraudulent inducement claim is collateral to the Subcontract. (Pl.'s Opp'n 11, 13.) Integrated Construction's briefing does not argue (1) that its fraud claim is not duplicative of the Complaint's Performance Breach of Contract cause of action, (2) that its fraud claim against Gracin results from a different legal duty to perform under the contract, and/or (3) that the Complaint alleges special damages incurred as a result of the misrepresentation that are unrecoverable as contract damages. *See State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 352 (S.D.N.Y. 2020) (outlining elements required to plead a non-duplicative fraudulent inducement claim).

The allegations in the Complaint do include an allegation that Gracin "breached his fiduciary duties to Universal by refusing to abide by the Subcontract and unilaterally abandoning the [P]roject" which "made Universal subject to litigation and potential costs." (Compl. ¶ 74.) Integrated Construction does not explain why this alleged legal duty Gracin owed to Universal, and not owed to Integrated Construction, is sufficient to support its fraud claim nor explain why damages that Universal, not Integrated Construction, suffered are "special damages" to warrant the Court finding the fraudulent inducement claim is not duplicative. For this reason, the Court only considers Integrated Construction's argument that its fraudulent inducement claim is collateral.

action for fraudulent inducement, a plaintiff must allege fraud . . . that is made before the contract comes into existence, and that leads the defrauded party to enter into the contract, rather than merely fraudulent non-performance of the contract."). The only alleged misrepresentations are those the Complaint claims occurred when Gracin spoke with Raman "[d]uring the course of the Project."[12] (Compl. ¶¶ 66–67.)

Second, even if Integrated Construction can allege with specificity any misrepresentation made by Gracin before or during the formation of the Subcontract, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall*, 471 F.3d at 416. Instead, Integrated Construction alleges "Gracin made certain representations about Universal's capabilities and assured Raman that Universal had sufficient manpower and could complete the [P]roject in a timely manner" and "had [Gracin] complied with the reasonable requirements of the [Subcontract], Universal would not be in this position." (Compl. ¶¶ 67, 74.) This is a "contractual promise[] regarding prospective performance" which Integrated Construction takes issue with Universal not abiding by and/or complying with. *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007); *see Rowe I*, 2024 WL 4315128, at *5 (finding that where the plaintiffs "have repurposed the allegations underlying their breach of contract claim to allege a fraudulent inducement claim," the cause of action must be dismissed because the repurposed allegations were "insufficient to allege a misrepresentation collateral to the allegations supporting their breach of contract claim" (internal quotation marks omitted)); *Fifth App, LLC v. Alpha Modus Ventures, LLC*, No. 22-CV-6607, 2024 WL 4145225, at *10–11 (E.D.N.Y. Aug. 29, 2024) (dismissing fraudulent inducement claim where the

---

[12] The alleged misrepresentations made by Gracin during performance of the Subcontract, *i.e.*, those made after the Subcontract's formation, are addressed *infra* Section II.e.ii.

44

"[a]llegations [ ] clearly reference [the d]efendants' duty to perform under [the contract]" because they "may not support a fraudulent inducement" claim); *N.Y. Univ.*, 87 N.Y.2d at 318 (where the complaint "alleges nothing more than a breach of contract and any covenants implied[,] it does not allege a cause of action for fraud in the inducement"). These allegations are clearly duplicative and redundant of Integrated Construction's Performance Breach of Contract cause of action.

This finding is further supported by Integrated Construction's allegation that it suffered a loss that "flow[s] from the alleged *breach* of the contract by [the d]efendants, not from [the p]laintiffs' being induced to enter into the contract." *Fifth App, LLC*, 2024 WL 4145225, at *11; *see Cho v. Kalliagas*, No. 04-CV-3371, 2008 WL 924750, at *6 (E.D.N.Y. Apr. 4, 2008) ("A plaintiff who asserts claims for both fraudulent inducement and breach of contract 'is required to allege damages distinct from contract damages' in order to recover on his fraud claim." (quoting *Sado v. Ellis*, 882 F. Supp. 1401, 1407 (S.D.N.Y. 1995))); *see also Vtech Holdings v. Lucent Techs., Inc.*, 172 F. Supp. 2d 435, 440 (S.D.N.Y. 2001) ("[P]art of the rationale for striking duplicative fraud claims is that there is ordinarily no difference between contract damages for nonperformance and fraud damages."). Instead, Integrated Construction contends that it believed Gracin's allegations to be true, relied upon them to enter into the Subcontract and "suffered injury as a proximate result of said misrepresentation." (Compl. ¶ 72.) This claim of damages is identical to Integrated Construction's claimed damages from Universal's Performance Breach of Contract, which is not only a restatement of a claim for breach of contract but also an independent reason why Integrated Construction's claim fails. (*Compare id.* ¶¶ 48–51 (alleging damages for breach of contract due to Universal's failure to perform the work as agreed) to ¶ 72 (alleging damages for fraud against Gracin).) *See Fifth App, LLC*, 2024 WL 4145225, at *11 (dismissing fraudulent inducement claim where the plaintiffs failed to allege any pecuniary loss

as a result of their reliance on the alleged misrepresentations made by the defendants beyond the damages resulting from the defendants' alleged breach of contract); *Lovely Peoples Fashion*, 1998 WL 422482, at *9–10 (noting that a party may not sustain a claim for fraud where the damages claimed are the same as those recoverable under a breach of contract claim, and finding that, even if the plaintiffs were able to demonstrate that the defendants' misrepresentation was both fraudulent and extraneous to the contract, their fraud claim would fail because they did not establish that they suffered direct damages on their fraud claim that were distinct from direct damages stemming from the breach of contract).

Integrated Construction appears to concede that Gracin's statements were promises to perform and instead argues that Gracin's promise was collateral to the contract and thus its claim is not duplicative. (*See* Defs.' Reply 10.) Integrated Construction cites to *Manas v. VMS Associates, LLC* in support. (Pl.'s Opp'n 13 (citing 863 N.Y.S.2d 4).) While Integrated Construction correctly quotes the case[13] in arguing that Gracin's promises constituted a representation of present fact collateral to the terms of the contract, the court in *Manas* found the plaintiff's allegations were not sufficient to plead a cause of action for fraudulent inducement. *Manas*, 863 N.Y.S.2d at 7. The plaintiff in *Manas* alleged that "[a]t the time [d]efendants made the [alleged] representations [regarding the short- and long-term compensation plans], [d]efendants did not intend to compensate [plaintiff] in conformity with their promises." *Id.* (alterations in original). The court found these were "merely '[g]eneral allegations that

---

[13] Integrated Construction quotes the following from *Manas v. VMS Associates, LLC*, 863 N.Y.S.2d 4, 7 (App. Div. 2008) (quoting *Deerfield Commcn's Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 96 (1986)): "[W]here the plaintiff pleads that it was induced to enter into a contract based on the defendant's promise to perform and that the defendant, at the time it made the promise, had a 'preconceived and undisclosed intention of not performing' the contract, such a promise constitutes a representation of present fact collateral to the terms of the contract and is actionable in fraud."

defendant[s] entered into a contract while lacking the intent to perform," and the allegations were "insufficient to support [the fraud-based] claim[s]" and must be dismissed. *Id.* (alterations in original) (quoting *N.Y. Univ.*, 87 N.Y.2d at 318). In the current case, Integrated Construction's allegations suffer the same deficiencies — the Complaint alleges Gracin made representations about Universal's "sufficient manpower" and ability to "complete the [P]roject in a timely manner" that "were false and untrue, and were known by him to be untrue at the time such statements were made." (Compl. ¶¶ 67–74.) Integrated Construction argues that "Gracin's statements falsely depicted an existing operational capacity and intent to perform that did not, in fact, exist" without alleging more. (Pl.'s Opp'n 13.)

These allegations are not "collateral" to the induced contract and do not support a separate actionable cause of action separate from Integrated Construction's Performance Breach of Contract claim.[14] *See NRW, Inc.*, 775 F. App'x at 24 ("Where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is breach of contract." (citation omitted)); *Spinelli*, 903 F.3d at 209 ("Misrepresentations made to induce a party to enter a contract are not actionable as fraud, however, unless they are 'collateral' to the contract induced." (citation omitted)); *Schaffer v. GeneDX,* LLC, No. 25-CV-2550, 2026 WL 265338, at

---

[14] *See infra* Section II.e.ii for further discussion regarding why the Court finds Integrated Construction's fraud claims against Gracin, an officer of Universal and individual Defendant, to be duplicative of Integrated Construction's Performance Breach of Contract claim against Universal, the corporate defendant. Ultimately, the Court finds that the alleged misrepresentation is not "distinct" from representing Universal's intent to perform under the contract. *See Exchange Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 158 (S.D.N.Y. 2023) ("[I]n cases allowing fraudulent inducement claims to move forward against non-parties to the contract where they might otherwise be duplicative of a breach claim against a contracting party, the alleged misrepresentation must be distinct from merely representing the *party's* intent to perform under the contract.").

*9 (S.D.N.Y. Jan. 30, 2026) ("[U]nder New York law, [a] claim for fraudulent inducement of contract can be predicated upon an insincere promise of future performance only where the alleged false promise is *collateral* to the contract the parties executed; if the promise concerned the performance of the contract itself, the fraud claim is subject to dismissal as duplicative of the claim for breach of contract." (second alteration in original) (internal quotation marks and citation omitted)); *Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co.* ("*Rowe II*"), No. 23-CV-8514, 2025 WL 1797219, at *7 (S.D.N.Y. June 26, 2025) (holding the plaintiffs' fraudulent inducement claim must be dismissed where the defendants' "purportedly false promise to reimburse [the p]laintiffs is no different from [the p]laintiffs' breach-of-contract claim"); *Netto v. Rastegar*, No. 12-CV-4580, 2012 WL 4336167, at *6 (S.D.N.Y. Sep. 20, 2012) (holding the defendant's alleged misrepresentation that he "had every intention" of complying with the contract was "simply not actionable as fraudulent inducement"); *cf. Schaffer*, 2026 WL 265338, at *10 (finding the plaintiff's fraudulent inducement claim was collateral to the plaintiff's employment contract because it was not a "mere mirror image of his contract claim" but instead involved separate alleged misrepresentations about the intended scope of his duties).

### ii.  Fraud during performance of the Subcontract

Integrated Construction's claims of Gracin's fraud during performance of the Subcontract suffer the same deficiencies and ultimately the same fate as Integrated Construction's fraudulent inducement claim.

"Under New York law, [t]he essential elements of a cause of action for fraud are representation of a material existing fact, falsity, scienter, deception, and injury." *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 641 (2d Cir. 2012) (internal quotation marks, footnote, and emphasis omitted) (quoting *N.Y. Univ.*, 87 N.Y.2d at 318); *Cargo Logs. Int., LLC v. Overseas Moving Specialists, Inc.*, 723 F. Supp. 3d 212, 226 (E.D.N.Y. 2024)

48

("Under New York law, the essential elements of a fraud claim include representation of a material existing fact, falsity, scienter, deception, and injury." (internal quotation marks omitted) (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001))); *see also Cortes v. 21st Century Fox Am., Inc.*, 751 F. App'x 69, 72 (2d Cir. 2018) (stating the elements of a fraudulent misrepresentation claim). Specifically, "[t]o state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 189–90 (2d Cir. 2023) (quoting *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015)); *see also Welch v. Bio-Reference Laby's, Inc.*, No. 25-494, 2026 WL 683189, at *2 (2d Cir. Mar. 11, 2026) (summary order) (quoting same); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021) (same); *GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 333 (S.D.N.Y. 2009) ("The second element of fraud in New York is intent to defraud, or scienter, which includes knowledge of the falsity of the representation." (citing *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995))).

"[I]n conjunction with the facial plausibility standard of Rule 12(b)(6)," pleadings for common law fraud claims "must satisfy the heightened pleading standard set forth in Rule 9(b)" of the Federal Rules of Civil Procedure. *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015); *Pentacon BV v. Vanderhaegen*, 725 F. Supp. 3d 350, 371 (S.D.N.Y. 2024) (citing *id.*) (same); *see Olson*, 29 F.4th at 71 ("Claims sounding in fraud must satisfy the heightened pleading standards of [Rule] 9(b)."); *Turk v. Rubbermaid Inc.*, No. 21-CV-270, 2022 WL 836894, at *4 (S.D.N.Y. Mar. 21, 2022) ("[F]raud claims — including common law fraud claims — are subject to the heightened pleading standard set forth in Rule 9(b).").

49

"Rule 9(b) provides that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *United States ex rel. Camburn v. Novartis Pharms. Corp.*, 124 F.4th 129, 135 (2d Cir. 2024) (alteration in original) (quoting Fed. R. Civ. P. 9(b)); *see United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25–26 (2d Cir. 2016) (quoting same).

### 1.    Pleading a fraud/fraudulent misrepresentation claim based on a breach of contract

In interpreting New York law, the Second Circuit has held that to maintain a claim for fraud based on intentionally false statements under a contract, a "plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract . . . ; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Negrete*, 759 F. App'x. at 48 (alterations in original) (quoting *Bridgestone/Firestone*, 98 F.3d at 20); *see Mariano v. CVI Invs., Inc.*, 809 F. App'x 23, 26 (2d Cir. 2020) (quoting same); *see also Poplar Lam Farm LLC v. The Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) ("Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempting to repackage them as sounding in fraud . . . are generally precluded, unless based on a duty independent of the contract."); *Mohegan Lake Motors, Inc. v. Maoli*, No. 16-CV-6717, 2017 WL 6335905, at *5 (S.D.N.Y. Dec. 7, 2017) (explaining that while a fraud claim cannot stand when the only fraud charged relates to breach of a contract, fraud and breach of contract claims can coexist if the plaintiff alleges a separate legal duty, collateral fraudulent misrepresentation, or special damages). "A fraud claim may be considered collateral to a contract if the contract . . . does not address the factual basis of the fraud claim." *FPP, LLC v. Xaxis US, IIC*, 764 F. App'x

92, 94 (2d Cir. 2019) (finding where "[t]he contract's written terms [ ] address the factual bases for the fraudulent misrepresentation . . . the fraud claim is duplicative"); *see Novick v. AXA Network, LLC*, 714 F. App'x 22, 24 (2d Cir. 2017) ("[C]auses of action . . . based on the same facts as the cause of action to recover damages for breach of contract generally should be dismissed as duplicative of the contract claim." (internal quotation marks and citation omitted)); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011) (A fraud claim that "arises out of the same facts as the contract claim" is precluded as duplicative of the contract claim. (quoting *Telecom Int'l Am. Ltd. v. AT&T Corp.*, 280 F.3d 175, 198 (2d Cir. 2001))); *see also Reddy v. Mangino*, No. 08-CV-4805, 2010 WL 2771836, at *2 (E.D.N.Y. July 13, 2010) (holding that the plaintiff's fraud claim based on "alleged intention not to perform [an] obligation under their agreement" was duplicative of the breach of contract claim); *Cougar Audio, Inc. v. Reich*, No. 99-CV-4498, 2000 WL 420546, at *6 n.4 (S.D.N.Y. Apr. 18, 2000) (explaining that the court follows the Second Circuit's rule in *Bridgestone/Firestone*, 98 F.3d at 19–20).[15]

Integrated Construction fails to assert fraudulent misrepresentations made during Universal's performance under the contract that are collateral to the Subcontract. Integrated Construction argues Gracin made various false statements during the course of the Project to Raman of Integrated Construction which it relied upon to its detriment. (*See* Pl.'s Opp'n 11–12.) Specifically, Integrated Construction contends the Complaint alleges: "(1) Gracin falsely stated that Universal would complete all work in accordance with the schedule (Compl. ¶ 65); (2) he

---

[15] As discussed *supra* footnote 11, Integrated Construction only argues that its fraud claim is collateral to its Performance Breach of Contract claim. For this reason, the Court does not address the other avenues to establish non-duplicity a separate legal duty and/or special damages. *See Negrete v. Citibank, N.A.*, 759 F. App'x. 42, 48 (2d Cir. 2019) (quoting *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)) (outlining elements required to plead a non-duplicative fraudulent inducement claim).

continued to make representations of compliance even after Universal had internally decided to stop performance (Compl. ¶¶ 67–68); (3) he misled [Integrated Construction] by promising manpower and timely material deliveries that never materialized (Compl. ¶¶ 69–71); [and] (4) [Integrated Construction] relied on these misrepresentations, delaying replacement efforts and incurring significant damages (Compl. ¶¶ 72–75)." (Pl.'s Opp'n 11.)  Ultimately, all of the allegations contained within the Complaint and Integrated Construction's opposition briefing relate to the Subcontract and thus are not collateral.  These claims are "wholly duplicative" of Integrated Construction's Performance Breach of Contract claim.

First, the alleged facts that underlie Integrated Construction's Performance Breach of Contract claim — Universal's failure to meet deadlines, comply with the schedule and timeline, complete contracted work, and inform Integrated Construction of any issues of delays that would preclude Universal's ability to fulfill its obligations outlined in the Subcontract — underlie Integrated Construction's fraud claim against Gracin.  *See Telecom Int'l Am. Ltd.*, 280 F.3d at 196 ("[W]here a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." (quoting *Sudul v. Computer Outsourcing Servs.*, 868 F. Supp. 59, 62 (S.D.N.Y. 1994))); *Winwear Ltd. v. N. S. U.S. Inc.*, No. 22-CV-5418, 2025 WL 1309356, at *9–10 (E.D.N.Y. May 2, 2025) (recommending that the plaintiff's fraud claim be dismissed as duplicative because the claim was premised on the same facts underlying the contract claim and "the alleged fraud allowed [the d]efendant to breach the contract"), *report and recommendation adopted*, 2025 WL 208525 (E.D.N.Y. July 24, 2025); *Smart Shoppers N.Y. LLC v. Tylers Coffee LLC*, No. 22-CV-4969, 2024 WL 113731, at *14 (S.D.N.Y. Jan. 10, 2024) (finding the plaintiff's fraud claim was based on the same facts as its breach of contract claim

where the plaintiff alleged the individual defendants made misrepresentations during the course of the parties contractual relationship involving the alleged breached contractual obligations).

Second, Gracin's alleged misrepresentations relate solely to Universal's ability and intention to perform under the Subcontract. *See Bridgestone/Firestone*, 98 F.3d at 19 (finding fraud claim duplicative of breach of contract claim where the defendant's allegedly fraudulent "representations were intended to lull [the plaintiff] into a false sense of security and . . . amount[ed] to little more than intentionally-false statements by [the defendant] indicating his intent to perform under the contract"); *Aviation Hagglers Int'l DWC-LLC v. UTD. Aviation Sols. LLC*, No. 24-CV-6610, 2025 WL 3451979, at *11–12 (E.D.N.Y. Nov. 12, 2025) (dismissing the plaintiff's fraud claim where the plaintiff's allegations "focus on [the d]efendant's fraudulent misrepresentations connected to [the d]efendant's *performance* under the [contract] which, as this [c]ourt has held before, warrants dismissal of the fraud claim as duplicative of the breach of contract"); *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12-CV-6017, 2013 WL 342922, at *3–4 (S.D.N.Y. Jan. 18, 2013) (dismissing the fraud claim where the alleged misrepresentations were "intrinsic to [the] contractual obligations and cannot separately support a plausible fraud claim"); *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 336 (S.D.N.Y. 2003) (dismissing fraud claim where the plaintiff's allegations concerned the defendant's "alleged misstatements about and concealments of the fraud it was supposedly perpetrating" as duplicative of plaintiff's breach of contract claim because "the alleged fraudulent conduct consists only of purported false representations regarding [the defendant's] adherence to the terms of the [contract]").

53

Accordingly, the Court disagrees with Integrated Construction's contention that its fraud claim is collateral to its Performance Breach of Contract claim.[16]

The Court's finding is further supported by Integrated Construction's failure to allege different damages arising out of Gracin's alleged misrepresentations compared to Universal's alleged Performance Breach of Contract.  (*Compare* Compl. ¶¶ 72, 75 (alleging injuries that arose out of Integrated Construction's entry into the Subcontract due to Gracin's alleged misrepresentations, that included "additional costs to hire replacement subcontractors, delays, rework, back-charges, [and] other related expenses") to ¶¶ 49, 51 (alleging injuries that arose out of Universal's alleged breach of the Subcontract, that included "additional costs to hire replacement subcontractors, delays, rework, back-charges, [and] other related expenses").)  *See Vtech Holdings*, 172 F. Supp. 2d at 440 ("[P]art of the rationale for striking duplicative fraud claims is that there is ordinarily no difference between contract damages for nonperformance and fraud damages.").  Further, Integrated Construction alleges that "[h]ad [Gracin] complied with the reasonable requirements of the [Subcontract], Universal would not be in this position."  (Compl. ¶ 74.)  Since Integrated Construction's alleged damages resulting from its fraud cause of action are the same as its Performance Breach of Contract cause of action, the claims are duplicative.  *See Revonate Mfg., LLC*, 2013 WL 342922, at *3 n.5 (finding the court's conclusion that the fraud claim was duplicative was "strengthened by the fact that the language

---

[16] The Complaint includes an allegation that "Gracin exercised complete domination over Universal and acted in his personal interests, not in the best interests of Universal."  (Compl. ¶ 73.)  Integrated Construction does not rely on this allegation to support its argument that its fraud claim is collateral to the Subcontract.  (*See generally* Pl.'s Opp'n.)  To the extent this allegation was included for this reason, the Court finds it unpersuasive.  *See Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12-CV-6017, 2013 WL 342922, at *3–4 (S.D.N.Y. Jan. 18, 2013) (finding the allegation that the misrepresentation was made "to further [the parties'] own extra-contractual motives" was not "collateral or extraneous" to the contract because the alleged misrepresentations revolved around specific obligations and provisions in the contract).

of the fraud and contract claims [were] nearly identical"); *see also Winwear Ltd.*, 2025 WL 1309356, at *10 (finding that the plaintiff's failure to seek damages for fraud separate from the damages requested for the defendant's breach of contract supported dismissing the plaintiff's fraud claim); *Microbanc, LLC v. InspireMd, Inc.* No. 16-CV-3860, 2018 WL 522335, at *5 (S.D.N.Y. Jan. 22, 2018) (same).

In support of its arguments, Integrated Construction relies on *Integrated Construction Enterprises, Inc.*, 2020 WL 614991, which denied the defendant's motion for summary judgment on Integrated Construction's fraud during performance of the subcontract claim. (Pl.'s Opp'n 11–13 (citing 2020 WL 614991, *5–7).) Integrated Construction argues that the court "allowed a fraud claim to proceed against a company president who personally made false representations about project progress and material procurement, even though the company was under contract" finding "these misrepresentations — made during performance and not merely at formation — were actionable because they were collateral to the contract and aimed at inducing continued reliance and delaying remedial action." (*Id.* at 11–12 (citing 2020 WL 614991, *5–6).) Integrated Construction argues that similarly in this case, the Court should allow the fraud claim to proceed to discovery because "Gracin's misrepresentations were not merely promissory statements about future conduct, but false statements of existing fact intended to mislead [Integrated Construction] and delay corrective steps." (*Id.* at 12.) The Court does not find this case persuasive. First, in *Integrated Construction Enterprises, Inc.*, no motion to dismiss was filed and the court applied the standard for a motion for summary judgment standard, considering evidence adduced during discovery. *Id.* Second, it is well settled under Second Circuit case law that New York law prohibits a plaintiff from suing a corporation, which is a party to the contract, for breach of contract, while also bringing a separate claim for fraud against the individual who represented the corporation, therefore bringing duplicative fraud and breach

55

of contract claims.  *See, e.g.*, *M&J Mech. Corp. v. Caldwell & Walsh Bldg. Constr., Inc.*, 790 F. Supp. 3d 334, 346 n.4 (S.D.N.Y. 2025) (adopting report and recommendation) ("Under this principle [prohibiting fraud claim duplicative of contract claim], a plaintiff may not 'sue the corporation ([which] was a party to the contract) for breach of contract, and then bring a separate suit for fraud against the individual who represented the corporation, thereby bringing duplicative fraud and breach of contract claims.'" (alterations in original) (quoting *Lefkowitz v. Reissman*, No. 12-CV-8703, 2014 WL 925410, at *5 n.1 (S.D.N.Y. Mar. 7, 2014))); *Ramus v. Bruwer*, No. 23-CV-1170, 2025 WL 831109, at *5–6 (S.D.N.Y. Mar. 17, 2025) (quoting same); *see also 6340 NB LLC v. Cap. One N.A.*, No. 20-CV-2500, 2024 WL 4100184, at *7–8 (E.D.N.Y. Sep. 5, 2024) (finding the plaintiff's fraud claims against the individual defendants, non-parties to the subject contract, were duplicative of the plaintiff's breach of contract claims against the company defendant); *Prepaid Ventures, Ltd. v. Paul Compton*, No. 18-CV-2102, 2022 WL 18859053, at *10 n.5 (E.D.N.Y. Dec. 21, 2022) (dismissing the plaintiffs' fraud cause of action against individual officers of the defendant company where the plaintiffs' "allegations in support of their fraud claims appear to recycle the same allegations underlying the breach of contract claims" brought against the defendant company), *report and recommendation adopted*, 2023 WL 2662311 (E.D.N.Y. Mar. 28, 2023), *aff'd*, No. 23-596, 2025 WL 444643 (2d Cir. Feb. 10, 2025).  "To avoid [this] result, '[c]ourts applying New York law routinely hold that representations by a non-party made on behalf of the contracting party may be duplicative of the contract claim against the contracting party.'"  *Ramus*, 2025 WL 831109, at *5 (quoting *Clarke v. TRIGO U.S., Inc.*, No. 22-CV-1917, 2023 WL 6806074, at *4 (S.D.N.Y. Oct. 16, 2023)).  "[W]here the alleged misrepresentation is simply a representation by a non-party that the party will in fact perform under the contract, (*i.e.*, a representation made on behalf of the contracting party), courts have found fraud claims to be duplicative, even as against the non-party."

56

*Exchange Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 158–59 (S.D.N.Y. 2023) (collecting cases).  As the Court finds that Integrated Construction's fraud claims are restatements of its Performance Breach of Contract claim, Integrated Construction cannot get around this duplicity finding by suing Gracin and not Universal, the contracting party.  Third, the court in *Integrated Construction Enterprises, Inc.* found the individual defendant's actual failure to meet a deadline "would not establish fraud."  2020 WL 614991, at *7.  Instead, the court looked at whether the individual defendant's earlier statements about the company's ability to meet that deadline were knowingly false.  *Id.*  Lastly, Integrated Construction provides no other case law to support its argument that the Court should allow its fraud claim against Gracin to proceed.  (*See generally* Pl.'s Opp'n.)  The Court is not required to adopt a holding of a persuasive case from a sister court.

The Court therefore finds Integrated Construction's fraud claim against Gracin to be duplicative of its Performance Breach of Contract claim against Universal.  *See FPP, LLC*, 764 F. App'x at 93–94 ("[A] fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." (citation omitted)).

### 2.    Integrated Construction has failed to meet the Rule 9(b) requirements to plead fraud against Gracin

Even if the Court found Integrated Construction's fraud claim against Gracin to be collateral to the Subcontract, and thus not duplicative of Integrated Construction's Performance Breach of Contract claim, Integrated Construction's fraud claim fails to satisfy the heightened pleading requirements of Rule 9(b).

"[T]he particularity pleading requirements of [Rule 9(b)] . . . 'require[ ] that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why

the statements (or omissions) are fraudulent.'" *Fin. Guar. Ins. Co.*, 783 F.3d at 402–03 (quoting

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir.

2004)); *see Blinkoff v. City of Torrington*, No. 23-717, 2025 WL 502041, at *3 n.3 (2d Cir. Feb.

14, 2025) (quoting *id.*); *A Star Grp., Inc.*, 2023 WL 8613525, at *1 (quoting same); *Olson*, 29

F.4th at 71 (quoting *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187).  "Put another way, Rule

9(b) 'requires that a plaintiff set forth the who, what, when, where[,] and how of the alleged

fraud.'" *U.S. ex rel. Henig v. Amazon.com, Inc.*, No. 19-CV-5673, 2025 WL 27736, at *6

(S.D.N.Y. Jan. 3, 2025) (quoting *U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d

242, 252 (S.D.N.Y. 2014)); *see Cap. One Hotel Grp. LLC v. M.T. Hawley Ins. Co.*, No. 24-CV-

485, 2026 WL 810301, at *4 (S.D.N.Y. Mar. 24, 2026) (quoting same); *Hous. & Redevelopment

Ins. Exch.*, 2026 WL 572941, at *8 (quoting same); *In re Drummon*, No. 24-CV-1668, 2025 WL

1327191, at *6 (S.D.N.Y. May 7, 2025) (quoting same).  "Although Rule 9(b) allows for

'[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally,'

Fed. R. Civ. P. 9(b), a plaintiff must still allege facts 'that give rise to a strong inference of

fraudulent intent.'" *Red Apple 86 Fleet Place Dev., LLC v. State Farm Fire & Cas. Co.*, No. 23-

1312, 2024 WL 4764060, at *3 (2d Cir. Nov. 13, 2024) (summary order) (alterations in original)

(quoting *Loreley Fin.*, 797 F.3d at 171).  "[A] 'strong inference of fraudulent intent' . . . 'may be

established either (a) by alleging facts to show that defendants had both motive and opportunity

to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of

conscious misbehavior or recklessness.'" *Fed. Deposit Ins. Co. v. Fifth Third Bank, N.A.*, No.

23-209, 2023 WL 7130553, at *2 (2d Cir. Oct. 30, 2023) (summary order) (quoting *United States

v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020)); *see also Honeyman v. Hoyt* (*In re Carter-Wallace,

Inc., Sec. Litig.*), 220 F.3d 36, 39 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp*, 25 F.3d

1124, 1128 (2d Cir. 1994)) (same).  A plaintiff must also establish that the defendant made the

false material misrepresentation with the intent to deceive.  *See, e.g.*, *Meda AB v. 3M Co.*, 969 F. Supp. 2d 360, 386 (S.D.N.Y. 2013) ("A fraud claim is not actionable without evidence that the misrepresentations were made with the intent to deceive." (quoting *Friedman v. Anderson*, 803 N.Y.S.2d 514, 517 (App. Div. 2005))).

Integrated Construction argues that the Complaint specifies "the who, what, when, where, and how of the alleged fraud to survive dismissal" as it "identifies Gracin as the speaker, outlines multiple misrepresentations regarding Universal's staffing and scheduling capacity, and contextualizes them within specific dates and communications made during [P]roject execution." (Pl.'s Opp'n 12 (citing Compl. ¶¶ 64–75).)  The Court disagrees.  While the Complaint identifies Gracin as the speaker, the allegations are inconsistent and otherwise unclear.  (*See* Compl. ¶¶ 64–75.)  First, Integrated Construction fails to plead the "when" and "where."  As discussed above, Integrated Construction alleges Gracin made the alleged misrepresentations when he spoke with Raman of Integrated Construction "[d]uring the course of the Project" but also alleges that Gracin made misrepresentations before the parties entered into the Subcontract "[i]n order to induce [Integrated Construction] to enter into an agreement with Universal."  (*Id.* ¶¶ 66, 68, 70.)  While the Subcontract was entered into on or about March 31, 2022, (*id.* ¶ 7), the Complaint alleges wrongdoing by Universal, at the latest, on February 19, 2024, (*id.* ¶ 34).  The alleged misrepresentations could have occurred at any point during this almost two-year period, which does not even include any pre-contract negotiations or discussions.  Further, the allegations in the Complaint do not specify when Gracin spoke with Raman, during which Integrated Construction alleges Gracin made the alleged misrepresentations.  Thus, it is not clear when or where — outside of the one undated conversation with Raman — Gracin perpetrated the alleged fraud.  *See Louis Hornick & Co., Inc. v. Barbyco, Inc.*, No. 12-CV-5892, 2013 WL 3819643, at *3–4 (S.D.N.Y. July 23, 2013) (finding the plaintiff's allegation that the defendant

represented and warranted "that all quality control issues had been resolved" was insufficient because the plaintiff did not identify "when, where, and by whom those statements were made"); *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 513–14 (S.D.N.Y. 2012) (finding fraud claim deficient where the plaintiff failed "to provide even a specific month for the alleged pre-contractual statement that the fuel cells would be ready within six months" and where the plaintiff failed to specify when or how the defendant made "'repeated representations' about the viability of the fuel cells"); *cf. Hempchain Farms, LLC v. Sack*, 516 F. Supp. 3d 197, 206 (N.D.N.Y. 2021) (finding the plaintiff "sufficiently alleged representations of material fact by outlining what those representations were, who made them, and when they were made," such as alleging one of the defendant's representatives indicated the defendant "could produce feminized hemp seed with a germination rate greater than 90% and that the seeds met all industry standards for feminized seeds" when the plaintiff visited the defendant's property in May of 2019).

Moreover, Integrated Construction has failed to plead the "what." The allegations in the Complaint only generally state that "Gracin made certain [false] representations about Universal's capabilities" involving Universal's "manpower" and ability to complete the Project in a timely manner. (*See* Compl. ¶¶ 67–68.) Integrated Construction fails to identify if those representations involved specific time schedules, revolved around the Project entirely, and/or referred to specific milestones identified in the Subcontract. Integrated Construction also fails to specify what Gracin's alleged misrepresentations on Universal's "manpower" encompassed — the amount of Universal's employees assigned to the Project, the amount of hours Universal could dedicate to the Project, and/or Universal's capabilities in meeting its obligations, as outlined in the Subcontract, to complete the Project. The Complaint's bare allegations are insufficient to plead fraud. *See Prepaid Ventures Ltd.*, 2022 WL 18859053, at *10 (dismissing

fraud claim where the allegation in the complaint that the individual defendants "concealed facts from [the p]laintiffs regarding their relationships with various entities" as vague and insufficient to impose liability); *Louis Hornick & Co., Inc.*, 2013 WL 3819643, at *3–4 (finding the plaintiff's allegation that the defendant represented and warranted "that all quality control issues had been resolved" was insufficient because the plaintiff did not identify "any specific statements made by any of the [d]efendants"); *Soroof Trading Dev. Co.*, 842 F. Supp. 2d at 513–14 (finding the plaintiff's identification of  specific instances of allegedly fraudulent statements, the defendant's "pre-contractual assurance that the fuel cells would be ready within six months and its assurance in November 2000 that the fuel cells would be ready in 2001" and the defendants "'repeated representations' about the viability of the fuel cells," insufficient because the plaintiff's "proffers merely rephrase these alleged statements and provide no direct quotes"); *cf. Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 478 (S.D.N.Y. 2001) (finding the amended complaint plead a fraud claim with sufficient particularity where it outlined "ten examples of oral misrepresentations of material fact" and "why each statement was fraudulent").

Therefore, the Court finds Integrated Construction has failed to plead fraud against Gracin with the required "particularity" to withstand dismissal.

### f.    Leave to amend the Complaint

Integrated Construction argues that "[g]iven the seriousness and specificity of the allegations, the Court should permit the claims to proceed to discovery" or, if "additional factual detail may ultimately be required, . . . [the Court should grant] dismissal with leave to amend." (Pl.'s Opp'n 14–15.)

Defendants argue that the Court should deny Integrated Construction's "informal request for leave to amend the Complaint" because "[Integrated Construction] ignored the requirements of this District's Local Rule 15 in moving for leave to amend the Complaint" by "fail[ing] to

61

attach the proposed amended complaint to its opposition papers" and "not specif[ying] how amending its Complaint will cure any deficiencies raised by Defendants in their moving papers."[17] (Defs.' Reply 11–12.) In addition, Defendants argue "[Integrated Construction]'s request to obtain additional discovery to supports its allegations is an 'insufficient reason to deny' Defendants' motion to dismiss. (*Id.* at 12 (quoting *Leonard v. Gateway I, LLC*, 890 N.Y.S.2d 33 (App. Div. 2009) ("[The plaintiff's] assertion that discovery is necessary in order to oppose defendants' motion is based on nothing more than unsubstantiated hope of discovering something relevant to her claims, and is an insufficient reason to deny the motion [to dismiss].")).)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) ("A court should freely give leave when justice so requires,

---

[17] The Court construes Integrated Construction's request in its opposition brief as a motion for leave to file an amended complaint. Therefore, Defendants are correct that Integrated Construction failed to adequately request leave to amend by failing to comply with the requirements in Rule 15 of the S.D.N.Y./E.D.N.Y. Joint-Local Rules. Regardless, the Court will overlook Integrated Construction's failure to comply with the Local Rules given Rule 15 of the Federal Rules of Civil Procedure's lenient nature. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); *Dixon v. Cartagena*, No. 25-CV-5144, 2026 WL 762368, at *3 (S.D.N.Y. Mar. 18, 2026) ("While adherence to the Local Rules is important, the Court will not deny [the plaintiff] leave to amend because he failed to comply with Local Civil Rule[] . . . 15.1(a).").

but it may, in its discretion, deny leave to amend for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks and citations omitted)); *Dalewitz v. Procter & Gamble Co.*, No. 22-CV-7323, 2025 WL 764023, at *2 (S.D.N.Y. Mar. 11, 2025) ("[A]bsent a showing of prejudice or bad faith, practice in this Circuit is to grant a motion to amend." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))).

The Court grants Integrated Construction leave to amend the Complaint to re-plead its ID Breach of Contract cause of action against Universal. *See Bernstein v. Citibank, N.A.*, No. 06-CV-15203, 2008 WL 11516014, at *7 (S.D.N.Y. Dec. 1, 2008) (granting leave to replead because amendment "may not be futile" where the plaintiff's breach of contract claim failed for lack of specificity); *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358–59 (S.D.N.Y. 2001) (granting the defendant's motion to dismiss the plaintiffs' breach of contract claim but granted the plaintiffs leave to re-plead to "specify which provision in the contract [the plaintiffs] rely upon").

The Court denies Integrated Construction leave to amend the Complaint as it relates to the causes of action for (1) breach of the implied covenant of good faith and fair dealing, (2) unjust enrichment, and (3) fraud against Gracin. As the Court has dismissed these causes of action finding each to be duplicative of Integrated Construction's Performance Breach of Contract cause of action, amending and re-pleading would be futile. *See SM Premium Imports LLC*, 2025 WL 2916152, at *4–5 (denying leave to amend finding, where the breach of the covenant of good faith and fair dealing, unjust enrichment, and fraud claims were duplicative of the breach of contract claim, amendment was futile).

Integrated Construction's argument that "[g]iven the seriousness and specificity of the allegations, the Court should permit the claims to proceed to discovery" and deny the motion to

dismiss is not supported by case law and is ultimately unpersuasive. (*See* Pl.'s Opp'n 14–15.)

*See Lasher v. Conroy*, No. 24-CV-6065, 2025 WL 3119247, at *9 (W.D.N.Y. Nov. 7, 2025) ("[A]llowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to streamline litigation by dispending with needless discovery and factfinding where the plaintiff has failed to state a claim under the law." (quoting *Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010))); *In re Aramid Ent. Fund Ltd.*, 664 B.R. 9, 84 n.44 (Bankr. S.D.N.Y. 2024) ("[W]here, as here, a plaintiff fails to state a claim that can survive a motion to dismiss, he or she is not entitled to discovery in an attempt to bolster presently deficient claims." (citing *Trump v. Vance*, 480 F. Supp. 3d 460, 502 (S.D.N.Y. 2020))); *Maroney v. Vill. of Norwood*, No. 19-CV-1404, 2020 WL 4284133, at *12 (N.D.N.Y. July 27, 2020) ("[M]otions to dismiss are designed to prevent precisely [ ] unwarranted fishing expeditions; a plaintiff is entitled to proceed to the discovery phase of litigation only if she has first alleged facts plausibly suggesting a claim."); *Salmon v. Blesser*, No. 13-CV-1037, 2014 WL 1883552, at *5 (N.D.N.Y. May 12, 2014) ("The [c]ourt cannot permit a plaintiff to proceed beyond a motion to dismiss and be afforded discovery when 'armed with nothing more than conclusions.'" (quoting *Iqbal*, 556 U.S. at 679)), *aff'd in part*, 802 F.3d 249 (2d Cir. 2015); *Interested Lloyd's Underwriters v. Ross*, No. 04-CV-4381, 2005 WL 2840330, at *3 (S.D.N.Y. Oct. 28, 2005) ("[C]ourts will not grant motions to dismiss where discovery would better serve to develop facts and examine claims." (citing *Baker v. Cuomo*, 58 F.3d 814, 818–19 (2d Cir. 1995), *vacated in part, on other grounds, sub nom. Baker v. Pataki*, 85 F.3d 919 (2d Cir. 1996) (en banc))).

### III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss, dismissing with prejudice Integrated Construction's claims for (1) breach of the implied covenant of good

faith and fair dealing against Universal, (2) unjust enrichment against Universal, and (3) fraud against Gracin.  The Court dismisses without prejudice Integrated Construction's ID Breach of Contract claim, granting Integrated Construction leave to amend the Complaint to re-plead this specific cause of action on or before May 29, 2026.  Discovery will move forward as set forth by Magistrate Judge Arlene Lindsay with regard to Integrated Construction's Performance Breach of Contract cause of action since Defendants did not move to dismiss this claim.

Dated:  May 15, 2026
        Brooklyn, New York

                        SO ORDERED:


                        _____/s/MKB_____
                        MARGO K. BRODIE
                        United States District Judge

65